ADAMS, Justice.
Plaintiff, Donald Stuart, appeals from a Sumter County Circuit Court order denying *1169 his request for specific performance of a contract. We affirm.
The facts of this case are as follows:
On July 28, 1965, Juanita Ennis and William B. Stuart entered into a contract whereby Ennis sold to William and Minnie Stuart a house located next door to her residence, and financed this purchase with an interest-free loan to the Stuarts. Ennis also gave the Stuarts an option to purchase the house in which she lived, which could be exercised on August 5, 1990, or upon her death. At the time of sale, Ennis’s house relied on the water purification system located under the house she sold to William and Minnie Stuart. On August 15, 1967, the contract of sale was amended to allow Stuart to pay Ennis’s monthly water bills when a water system was made available to these houses.
William and Minnie Stuart assigned the contract to John and April Stuart (William’s brother and sister-in-law) on February 18, 1976. In February of 1980, the contract was assigned back to William and Minnie, who then assigned it to William’s other brother, Donald Stuart, who paid $10,000.00 for it.
In July of 1978, William Stuart wrote Juanita Ennis a letter in which he assured her that he would not exercise his option as long as she wished to live in the house, even though he had assigned his interest in the contract to John and April Stuart some two years prior.
On September 16, 1981, Juanita Ennis executed and recorded an instrument in which she revoked the “purported option” granted to William and Minnie Stuart in the contract dated July 29, 1965, due to a total failure of consideration as well as the Stuarts’ attempt to assign personal rights which were non-assignable. Juanita Ennis died, and, under the terms of her will, Mildred Ennis, the defendant herein, received title to the house which is the subject of this lawsuit.
Donald Stuart and Mildred Ennis entered into a separate transaction wherein Donald Stuart assumed the lessee’s obligations under a lease made by Mildred Ennis, as lessor, and Henry Richardson, as lessee. Pursuant to this lease, Donald Stuart paid Mildred Ennis $150.00 per month to rent the house beginning in January 1982. After Juanita Ennis died, Donald Stuart began writing “pursuant to the option” on his rent checks, but Mildred Ennis refused to accept them, and they were submitted to the court pending the resolution of this case.
Donald Stuart filed this suit requesting the court to issue an order allowing him to exercise the option given in the contract between Juanita Ennis and William Stuart. The estate of Juanita Ennis was substituted as a party, and on March 29, 1984, the trial court found in favor of defendants arid against Donald Stuart, who, after his motion for new trial was denied, filed this appeal.
The trial court, in its final order, found that “no consideration was given to Juanita Ennis for the alleged option, and also that this option could not be validly assigned since it was personal to the assignee.” The plaintiff, Donald Stuart, asserts that both conclusions reached by the trial court are wrong, and, therefore, that its judgment should be reversed.
First, Stuart argues that the trial court erred when it found that there was no consideration for the alleged option. Stuart maintains that the supplying of water and the payment of water bills for over sixteen years is sufficient consideration for the option. However, the court was presented with credible evidence to support defendants’ position that the furnishing of water was consideration for the interest-free loan and not the alleged option. The 1967 amendment to the original agreement states in pertinent part:
Whereas the said agreement to furnish said water was in lieu of the payment of interest on the purchase money mortgage as set out under the original terms of said contract....
Also, paragraph two of the original agreement provides:
*1170 2. That should the party of the second part fail or refuse to furnish purified water in reasonable amounts after reasonable notification by the party of the first part ... then in that event the party of the first part shall have the right and option to have the property hereinabove described (the same that is this day conveyed to the party of the second part) reconveyed to her at which time the party of the second part shall vacate the same peaceably.
In this section the parties agreed that, if William Stuart should fail to furnish purified water to Juanita Ennis, then she had the right to regain the house sold to Stuart, but there is nothing included herein which states that the alleged option would be affected by the failure to furnish water. It is clear from the above-quoted language from the original agreement and the amendment thereto that the parties intended for the furnishing of water by William Stuart to be in lieu of the payment of interest on the loan made to him by Juanita Ennis.
Defendants’ argument is further aided by the fact that when the trial court substituted the estate of Juanita Ennis as a defendant, this action became a suit for specific performance, thus making applicable § 8-1-40, Code 1975, which states in pertinent part:
Specific performance cannot be enforced against a party to a contract in any of the following cases:
(1) If he has not received an adequate consideration for the contract;
(2) If it is not, as to him, just and reasonable....
Therefore, the court must examine the adequacy of consideration as well as whether it would be just and reasonable to force Mildred Ennis to sell the house to Donald Stuart for the amount stated in the contract. Defendants offered proof that it would be very unfair to force Mildred En-nis to sell the house at the price stated in the original agreement. Defendants also introduced evidence that Juanita Ennis and William Stuart were close personal friends, that Stuart was anxious to own both houses, and, based upon their relationship, Juanita Ennis decided to give Stuart the option of purchasing the house in the future.
Based upon the testimony at trial as to the intent of the parties with regard to the agreement, as well as the testimony concerning the value of the house and the nature of the relationship between Juanita Ennis and William Stuart, the trial court concluded that there was no consideration given to Juanita Ennis by William Stuart, and that, therefore, Juanita Ennis’s revocation of the alleged option rendered it void. Much of the evidence presented to the court was disputed, and, as we stated in Alabama Farm Bureau Mutual Casualty Insurance Company v. Moore, 435 So.2d 712 (Ala.1983):
Where a trial court has heard evidence presented ore tenus, its findings of fact will not be disturbed on appeal unless clearly erroneous or manifestly unjust, and such rule is especially applicable in cases in which the trial court makes its findings of fact after hearing conflicting evidence; every presumption will be indulged in favor of the court’s findings, and those findings will not be disturbed unless palpably wrong. Gulledge v. Frosty Land Foods International, Inc., 414 So.2d 60 (Ala.1982); Leslie v. Pine Crest Homes, Inc., 388 So.2d 178 (Ala.1980).
435 So.2d at 714. We are not persuaded that the trial court’s findings regarding the consideration issue were clearly erroneous or manifestly unjust. We now focus our attention on whether the contract was assignable.
Plaintiff contends that Juanita En-nis not only knew of the assignment of the contract to him, but that she approved of it. As support for this assertion he offers William’s testimony, wherein William stated that he informed Juanita of the first assignment (to John and April Stuart) and that she voiced no disapproval. Also, plaintiff contends that Juanita was present when he “inspected” the house prior to the assignment, so that she must have known *1171 what was going to happen. However, defendants produced evidence tending to show that Juanita was not aware of the first assignment, as it was William Stuart, not John and April Stuart, that was contacted by Juanita in 1978 when she became concerned about being put out of her house. Furthermore, it was William, not John and April, who wrote Juanita a letter assuring her that he would not exercise his option as long as she wanted to stay in the house. Plaintiff has failed to offer any explanation why, if Juanita knew about the original assignment, she contacted William and not John and April Stuart when she wanted to discuss the matter.
Next, Stuart argues that the contract was not personal to the assignor and, therefore, that the assignment to him was valid. The general rule with regard to the assignability of options is discussed in 6 Am.Jur.2d Assignments § 20 (1980):
The assignability of the right of the holder of an option is governed by the general principles which govern the as-signability of other contract rights. It is generally held that, in the absence of an express provision in an option agreement forbidding its assignment, the holder of the option may assign his right to a third person who may exercise the option, unless there is something in the circumstances, the subject matter, or the nature of the transaction which justifies the assumption that a particular trust or confidence was reposed in the op-tionee alone, or shows that the option was intended only to be open to acceptance by him personally. [Emphasis added.]
[[Image here]]
If the terms of an option involve the credit of the purchaser, it will be regarded as personal to him and therefore not assignable by him so as to require the vendor to sell on the personal credit of the assignee.
As further support for defendants’ position that the contract was personal and, therefore, not assignable, 6A C.J.S. Assignments § 33 (1975), states:
A contract, which shows by its nature or terms that it is personal in character, that is, that reliance for its performance is placed on the integrity, credit, or responsibility of a party, or that confidence or trust is reposed in him personally for its performance, is not assignable, even in the sense of its performance being delegated to another, without the consent of the other party to the contract. ...
We are of the opinion that the com tract before us was meant to be a personal contract between Juanita Ennis and William Stuart. The two were close personal friends, and Juanita Ennis was aware of William’s desire to own both houses, so the two worked out an arrangement whereby, in return for furnishing her water, William was allowed to purchase the second house over time, interest free. Stuart even admitted at trial that he was extended credit from Juanita Ennis.
We recognize that when two parties enter into a contract for the purchase of an item, there are a great many factors which the creditor considers before deciding to extend credit to the debtor. It is clear that, should the debtor be allowed to assign the contract at will, the circumstances could vary drastically from those which prompted the original extension of credit. It would be unjust to force the seller to abide by the terms of the original agreement in this type of situation. The seller should be free to accept an assignment, but there was a dearth of credible evidence to suggest that such an acceptance was made by Juanita Ennis in this case. Barring such acceptance, the contract, including the extension of credit, which was certainly intended to be between Juanita Ennis and William Stuart, was of a personal nature and, therefore, non-assignable.
We again point out that the trial court was presented the evidence ore tenus, and we are of the opinion that its conclusions regarding the nature of the contract and Juanita Ennis’s knowledge of any assignments are due to be given great weight. *1172 The judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
FAULKNER, ALMON and EMBRY, JJ., concur.
TORBERT, C.J., concurs specially.