This is an appeal from a final judgment entered in favor of plaintiff, Pine Crest Homes, Inc., against the defendant, James H. Leslie, in which the trial court held (1) that Leslie owed Pine Crest $23,761.38, (2) that Leslie was liable for one-half the reasonable *Page 179 
attorneys' fees incurred and paid by Pine Crest for defending a claim filed against Pine Crest, and (3) that Leslie was liable for one-half of any judgment rendered against Pine Crest on the same claim.
The trial was before the Honorable William A. Thompson, who made findings of facts and conclusions of law, as follows:
"This action came on to be heard by the Court and was submitted on the pleading and testimony and evidence presented in open court.
"The complaint alleges an action for an accounting by the Plaintiff, Pinecrest [sic] Homes, Inc., against the Defendant, James H. Leslie, and seeks an accounting of the financial dealings of a joint venture between the parties. These dealings relate to the construction and sale of sixteen houses built by the joint venture. The Plaintiff further seeks a judgment against Leslie for one-half of the loss sustained by the joint venture and, also, the sums paid to Leslie alleged to be loans and advances against anticipated profits.
"The Defendant Leslie admits a joint venture between himself and Pinecrest but denies that there exists any indebtedness due by him. In summary, Leslie contends that he and Pinecrest entered into a joint venture wherein Pinecrest was to provide the building lots, financing, accounting services and make all payments of payroll, materials and sub-contractors. Leslie avers that he was responsible for the actual construction of the houses involved. Leslie alleges that Pinecrest refused to account to him, refused and denied access to the books and records, refused to agree on sales prices, refused to correct obvious errors, padded construction costs, charged the venture for labor and materials for the personal benefit of Pinecrest's president and numerous claims of unauthorized and unwarranted costs. Leslie further denies that he received loans and advances from Pinecrest and contends that all sums received by him were sums actually owed by Pinecrest to him. Leslie avers that the transactions are so complex that the services of an independent certified public accountant are required and should be appointed by the Court to render an accounting and that, upon such accounting, Pinecrest is due to account to him for monies due and owing.
"Prior to trial, the Court, on the joint motion of the parties, appointed J. Wray Pearce of Pearce, Summerford and Company, P.C., Certified Public Accountants, to render an accounting of the profits and losses of the sixteen houses referred to in the complaint. The accounting was to be based upon the construction costs of the houses, the financing, sale and income or loss therefrom.
"The accounting was thereafter conducted by the accountant and a memorandum report and analysis was provided to each of the parties. After certain adjustments were made by the accountant to his preliminary computations, he reported to the Court and the parties a net combined loss on the sixteen houses of $1746.26 without regard to loans or advances, if any, to Leslie. The accountant's report was subject to certain enumerated exceptions. These related to a few cost charges not verified by invoices and a few invoices for which no costs were charged.
"Upon consideration of the matters presented, the Court finds as follows:
"1. That Pinecrest Homes, Inc., and James H. Leslie entered into a joint venture agreement during the latter months of 1976 to construct sixteen houses for the purposes of sale. The houses were to be built on real estate owned by Pinecrest, as alleged in the complaint. The agreement further provided that Pinecrest was to provide the financing and administrative requirements attendant to construction, and Leslie was to provide the job supervision required for such construction. Profits, if any, were to [be] divided equally. All of such agreement was verbal and no part thereof was reduced to writing.
"2. In approximately March or April 1977, disagreements arose between Leslie and Leonard Hultquist, the President and owner of Pinecrest, over the payment of certain workmen and, also, over the loss *Page 180 
incurred in connection with the sale of one of the houses. As a result of these disagreements, Leslie stopped performing his part of the responsibilities of the venture and Pinecrest was thereafter required to complete and sell the remaining houses. At the time of this occurrence, seven of the sixteen houses had been completed and sold.
"3. During the friendly and agreeable period of the venture, Leslie received the sum of $27,150 from the joint venture account as loans and advances against anticipated profits. According to the venture records, the parties had a paper profit of approximately $7829. The records show that the profits on the houses built and sold thereafter were nominal and that, in several instances, actual losses were incurred.
"4. Pursuant to the request of both parties and by agreement, an accounting of the joint venture was conducted by an independent accountant. This accounting shows that the venture incurred a loss of $1746.26 on the construction and sale of the sixteen houses. The evidence produced in open court failed to substantiate the correctness of certain charges by Pinecrest to the construction. These charges are:
 Ace Plumbing $ 386.00 Adjustment on Blaylock Construction 590.22 Labor charges (Cummins) 421.77 Overhead 3150.00 -------- Total of Chargebacks 4547.99
"The evidence further shows that $400 was charged by Pinecrest to each of the sixteen jobs as a bookkeeping entry representing an allocation of insurance costs of a master builders risk insurance policy that was paid for and owned by Pinecrest. This policy covered other construction as well as that in controversy here. This arbitrary allocation was made notwithstanding the evidence that there was deducted from the payment to each subcontractor 1% of his contract to represent and cover the costs of workmen's compensation insurance. No accounting was made by Pinecrest or the independent accountant of these sums, but the evidence shows that Pinecrest charged to each job the total of the subcontract without an accounting or adjustment of the deduction. Such being shown, the arbitrary and unproven charge of $6400 to the joint venture is not due to be allowed.
"The evidence also shows that the independent accountant did not charge to the joint venture the sum of $2424.48 that was paid or expended by Pinecrest to correct deficiencies in connection with the sale of Lot 22, River Run, to Richard C. Duel, III, and a subsequent dispute with that purchaser. The joint venture is due to be charged with this sum and included in the accounting here.
"These adjustments are summarized and the totals thereof are as follows:
 Account of joint venture by accountant — Loss ($ 1,746.26) Additional charges in connection with Lot 22, River Run ( 2,424.48) --------- Loss ( 4,170.74) Improper charges to joint venture 10,727.24 --------- Net profit of joint venture $ 6,727.24 Loan and advances of Leslie $27,150.00 Less: Leslie's share of profits 3,388.62 -------- Due Pinecrest by Leslie $23,761.38
"Based upon the foregoing, the Court concludes that the correct accounting between the parties shows that Leslie has overdrawn his share of the joint venture profits by $23,761.38 and Pinecrest is entitled to a judgment against Leslie for this sum.
"The Court further concludes that the certain other charges questioned or challenged by Leslie are not due to be approved and confirmed.
"5. The evidence further shows that Pinecrest is the Defendant in a pending action in the Circuit Court of this circuit in Case No. CV 78-03075 wherein the Plaintiffs, Robert P. Walter and Beth J. Walter, allege that they suffered damages as a result of their dealings with Pinecrest. These dealings were in connection with the purchase of a home by the Walters that was constructed and sold by the joint venture of Pinecrest and Leslie. Based upon this evidence and the matters presented in connection therewith, the Court concludes that Leslie is jointly liable with Pinecrest for *Page 181 
any judgment resulting from this lawsuit and the reasonable costs of defending it.
"In consideration of the foregoing, it is ORDERED, ADJUDGED and DECREED by the Court as follows:
"1. The Plaintiff, Pinecrest Homes, Inc., shall have and recover of the Defendant, James H. Leslie, the sum of $23,761.38, and judgment is hereby rendered for the said Plaintiff and against the said Defendant for said sum.
"2. The Defendant, James H. Leslie, is liable and obligated to pay to the Plaintiff, Pinecrest Homes, Inc., one-half of any judgment rendered against Pinecrest Homes, Inc., and paid by it in pending Civil Action No. 78-03075, wherein Robert P. Walter and Beth J. Walter are Plaintiffs and Pinecrest Homes, Inc., is Defendant; and the said James H. Leslie is further obligated to pay to the said Pinecrest Homes, Inc., one-half of the reasonable costs of attorneys fees incurred and paid by Pinecrest Homes, Inc., for defending the said action.
"3. The costs of this action are taxed one-half to the Plaintiff and one-half to the Defendant.
"DONE and ORDERED this 4th day of June 1979."
On appeal, Leslie contends that the trial court improperly classified nine $1,350 payments as advances or loans against the profits of the joint venture. Leslie contends that the payments were made as salary payments by Pine Crest to Leslie, that Leslie was, therefore, not indebted to Pine Crest for these payments, and that this Court should either order a remittitur of $12,150 or reverse the trial court's decree.
Leslie presented evidence that the nine payments had been paid out regularly once a month, that all the payments were for an equal amount, that Pine Crest had deducted F.I.C.A. (social security) and S.U.I. (state unemployment) according to percentage rates used by employers for employee deductions, and that at least one of the checks had the notation "Payroll Check" printed on it.
Pine Crest presented evidence that the checks were not payroll checks, that they were advances against the anticipatedprofits of the joint venture, that Leslie was never a direct employee of Pine Crest, and that the deductions were made from the checks by Pine Crest at the request of Leslie for tax saving purposes.
There was thus a conflict in the evidence. Where the trial court has heard the evidence ore tenus, its findings of fact will not be disturbed on appeal unless clearly erroneous or manifestly unjust. Gertz v. Allen, 376 So.2d 695 (Ala. 1979). This rule is especially applicable in cases where the trial court makes its findings of fact after hearing conflicting evidence; every presumption is indulged in favor of the court's findings of fact and those findings will not be disturbed unless palpably wrong. Vance v. Allied Community Center,374 So.2d 312, 314 (Ala. 1979). We cannot say that the trial court's finding that the nine payments made by Pine Crest to Leslie was clearly erroneous, manifestly unjust, or palpably wrong. It was supported by credible evidence.
Leslie next contends that the trial court erred in ruling that Leslie was liable for one-half the attorneys' fees and one-half of any judgment entered in the pending action against Pine Crest. Leslie contends that the case should be remanded for a determination of whether Leslie is, in fact, liable since the complaint in the pending action alleges that the purchaser negotiated for and purchased his house in May and June of 1977, while Leslie terminated his activities with the joint venture in March or April of 1977. Additionally, Leslie contends that since Pine Crest filed a complaint for an accounting only, and for judgment for amounts due it by Leslie, the issue of whether Leslie was liable for one-half the attorneys' fees and any judgment entered was not properly raised at trial. Leslie contends that a determination that Leslie is liable for one-half the attorneys' fees and judgment in the pending action is a complaint for special damages under ARCP 9 (g). *Page 182 
Leslie's position, in sum, is that, in the action for an accounting, consideration of the pending lawsuit is an item of special damage, of which Leslie should have had notice, and that lack of notice prejudiced him.
An account and an accounting have been defined, respectively as:
 "Account. A detailed statement of the mutual demands in the nature of debit and credit between parties, arising out of contracts or some fiduciary relation. A statement in writing, of debts and credits, or of receipts and payments; a list of items of debts and credits, with their respective dates. A statement of pecuniary transactions; a record or course of business dealings between parties; a list or statement of monetary transactions, such as payments, losses, sales, debits, credits, etc., in most cases showing a balance or result of comparison between items of an opposite nature.
 "Accounting. An act or system of making up or settling accounts; a statement of account, or a debit and credit in financial transactions. Kansas City v. Burns, 137 Kan. 905, 22 P.2d 444. Rendition of an account, either voluntarily or by order of a court. In the latter case, it imports a rendition of a judgment for the balance ascertained to be due. The term may include payment of the amount due."
Black's Law Dictionary 17, 18 (5th ed. 1979).
In the instant case, the trial court determined all liabilities flowing from each party to the joint venture and flowing from the joint venture to the parties.
The evidence showed that the action upon which the pending lawsuit was based arose out of a house built by the joint venture. In fact, testimony showed that Leslie had constructed ninety percent of the house before he stopped performance. The trial court found that the house was constructed by and sold by the joint venture, and that, therefore, the costs of defending the lawsuit and any judgment entered in the action was a liability of the joint venture. This ruling was within the trial court's jurisdiction in the action for an accounting between the two parties. We cannot say that the finding by the court that the house made the basis of the lawsuit was constructed by the joint venture was clearly erroneous under the ore tenus rule previously cited. Gertz v. Allen, supra.
Leslie's classification of the holding as an award of special damages is erroneous. The determination by the court that the costs of defending the pending lawsuit, and paying any judgment entered, were liabilities of the joint venture, was a natural and necessary finding in the action for an accounting, an equitable action. Moreover, technical accuracy in all details is not required in the pleading of a bill for an accounting.Selman v. Bryant, 261 Ala. 53, 72 So.2d 704 (1954). We, therefore, hold that the trial court did not err in determining that Leslie was liable for one-half the attorneys' fees and any judgment entered against Pine Crest in the pending action by the purchaser of the house.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.