(216 P.3d 658)
No. 100,293

JOHNSON COUNTY DEVELOPMENTAL SUPPORTS, AN AGENCY OF JOHNSON COUNTY GOVERNMENT, *Appellant,* v. KANSAS DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES and ALBERTA BRUMLEY, *Appellees.*

Opinion filed August 28, 2009.

*LeeAnne Hays,* of Johnson County Legal Department, for appellant.

*Bruce A. Roby* and *John H. House,* of Office of General Counsel, of Kansas Department of Social and Rehabilitation Services, for appellee.

*J. Eugene Balloun* and *Christina L. Lewerenz,* of Shook, Hardy & Bacon, L.L.P., of Kansas City, Missouri, for appellee Alberta Brumley.

*James M. Kaup,* of Kaup & Shultz, Attorneys at Law, LC, of Lawrence, for *amicus curiae* InterHab, Inc.

Before MCANANY, P.J., GREEN and CAPLINGER, JJ.

CAPLINGER, J.: In this administrative appeal, Johnson County Developmental Supports (JCDS) challenges the district court's order affirming the decision of the Kansas Department of Social and Rehabilitation Services (SRS) overruling JCDS's denial of Alberta Brumley's application for affiliate status.

The primary issue on appeal involves whether SRS erroneously determined that Alberta Brumley did not have a "known" history of abuse, neglect, or exploitation of children or vulnerable adults, as set forth in K.A.R. 30-63-28(f), and thus she was not prohibited from affiliating with the agency as a paid provider of services for her disabled son.

We conclude the district court properly upheld SRS's interpretation of the term "known" in K.A.R. 30-63-28(f) to require more than mere allegations or suspicions of abuse. Rather, as the district court found, the term contemplates allegations of abuse, neglect, or exploitation that have been substantiated or confirmed after the parties have had an opportunity to present evidence and a determination has been made from conflicting evidence. Because none of the allegations of abuse against Alberta Brumley were substantiated or confirmed in this manner, the district court did not err in

affirming the agency's decision directing JCDS to enter into an affiliation agreement with Alberta.

*Factual and procedural background*

Delmar and Alberta Brumley (the Brumleys) served as licensed foster care providers for many years until April 15, 1993, when SRS did not renew their license. While foster parents, the Brumleys accepted placement of approximately 100 to 150 foster children, many of whom were troubled teenagers.

One of those foster children, Jeremie, was born in October 1982 and was an infant when placed with the Brumleys. Jeremie has suffered from severe, lifelong, mental and physical disabilities. The Brumleys later adopted Jeremie with the understanding that SRS would continue to provide financial support to assist with Jeremie's care. In 2000, the Brumleys were appointed Jeremie's legal guardians. After Delmar suffered a stroke in 2004, Robert Hodgdon replaced Delmar as Jeremie's guardian.

While Jeremie was a minor, he received public assistance through the Attendant Care for Independent Living program. However, as he approached age 21, SRS and JCDS worked with the Brumleys to implement a plan to transition Jeremie into the Home and Community Based Services program for adults. The transition did not develop smoothly, and a care plan for Jeremie had not been implemented by his 21st birthday.

Because no care plan was in place, Jeremie received no public assistance for 18 months. JCDS and the Brumleys eventually agreed on several care plans, but SRS rejected these plans. In 2004, Delmar Brumley applied for affiliate status in order to become a paid provider for Jeremie.

In connection with the application, JCDS investigated the Brumleys' past association with SRS as foster parents and discovered several reports of abuse made against the Brumleys. However, only one report resulted in the filing of criminal charges against Alberta Brumley in 1994. Alberta eventually pled guilty to one misdemeanor charge of contributing to a child's misconduct, which related to keeping a foster child home from school on the recommendation of a sex therapist. The remaining charges were dis-

missed. Alberta's misdemeanor conviction was expunged in August 2000.

JCDS also discovered several other reports of abuse against the Brumleys, all of which were investigated and eventually deemed unfounded or simply unconfirmed. JCDS also learned that a former foster child of the Brumleys filed a civil suit against the Brumleys and SRS in 1993 alleging abuse by the Brumleys in the 1980's. However, the suit was later voluntarily dismissed by the plaintiff.

JCDS's investigation also disclosed that in 1992 the Brumleys' adopted son Douglas was killed from a blow to the stomach and other physical injuries incurred while staying with Kimberlee Lee, the Brumleys' adult daughter. Ultimately, Lee and her husband were convicted of the child's murder. However, the Brumleys were found not culpable in the child's death after an investigation determined that Alberta had placed the child with her daughter temporarily after Alberta underwent surgery.

Finally, JCDS's investigation determined that in May 1997 a nurse providing care to Jeremie Brumley reported that Alberta had falsified time sheets regarding her daughters' care of Jeremie. Although the Kansas Attorney General's office conducted a Medicaid fraud investigation, no charges were filed based on that investigation.

Based on the information obtained in its investigation, JCDS denied Delmar's application for affiliate status. That decision was not appealed.

Throughout 2004 and 2005 Alberta Brumley and Robert Hodgdon contacted state legislators in an effort to obtain their assistance in obtaining SRS's approval of a care plan for Jeremie that was acceptable to the Brumleys. As Jeremie's legal representatives, attorneys from the Disability Rights Center (DRC) also lobbied vigorously on Jeremie's behalf.

In February 2005, SRS and JCDS representatives met with the Brumleys to attempt to develop a workable care plan for Jeremie. Though a plan was not approved at the meeting, subsequent negotiations led to an agreement providing approximately $70,000 annually in self-directed care support for Jeremie. At the February meeting, a DRC attorney representing Jeremie inquired about

whether Alberta could become a paid provider. JCDS welcomed Alberta's application but indicated the application would probably be denied. Alberta subsequently submitted an application seeking affiliate status in order to become a paid provider for Jeremie.

Based on the information obtained during the investigation of Delmar's previous application as well as additional information obtained from the Kansas Attorney General's and Johnson County District Attorney's offices, JCDS determined that Alberta had a "history" of abuse, neglect, or exploitation of a child under K.A.R. 30-63-28(f) and could not become an affiliated provider. JCDS denied Alberta's application on March 28, 2005. Jeremie, through the DRC, and Alberta appealed the denial of Alberta's application to the Johnson County Council of Community Members (Council).

Meanwhile, in correspondence dated March 11, 2005, SRS advised Jeremie's DRC attorney that SRS had approved a care plan permitting Jeremie's guardians to become paid providers. SRS did not initially advise JCDS of this plan.

On April 19, 2005, Alberta and SRS agreed to a care plan that permitted Alberta to become a paid provider but required the Brumleys to release SRS and JCDS from any liability resulting from the Brumleys' care of Jeremie.

On April 20, 2005, the Council declined to hear Alberta's appeal of JCDS's denial of Alberta's application for affiliation, reasoning that it lacked authority to interpret SRS regulations. On the same date, JCDS informed the Brumleys' billing affiliate, Resource Center for Independent Living (RCIL), that the Brumleys were ineligible for support or reimbursement payments. RCIL, in turn, contacted SRS and was directed by SRS to pay the Brumleys and told that SRS would inform JCDS of the decision.

On May 31, 2005, the DRC, on behalf of Jeremie, appealed JCDS's denial of Alberta's affiliate application to Margaret Zillinger, Director of SRS's Community Supports Services. In a letter decision dated June 3, 2005, Zillinger overruled JCDS's denial of Alberta's affiliation application and directed JCDS to enter into an affiliation agreement with Alberta. On June 27, 2005, JCDS requested an administrative hearing to challenge SRS's order requiring JCDS to affiliate with the Brumleys.

While the administrative proceeding was pending, JCDS threatened RCIL with termination of its affiliate status if RCIL did not discontinue payments to Alberta by April 30, 2006. Jeremie, through the DRC, and the Brumleys filed suit in Johnson County District Court seeking a temporary restraining order preventing JCDS from refusing payment to Alberta. The district court granted the requested restraining order and ultimately granted an injunction against JCDS.

The administrative law judge (ALJ) assigned to JCDS's appeal of SRS's affiliation order conducted a 2-day administrative hearing on December 19-20, 2006. At the hearing, JCDS introduced the testimony of Jennifer Bustamonte, who was one of the Brumleys' foster children in 1984-85 and was listed as a witness in the 1994 abuse complaint against Alberta Brumley. Bustamonte testified regarding abuse of other foster children of the Brumleys that she claimed to have witnessed more than 20 years earlier.

The ALJ ultimately issued an order agreeing with SRS's interpretation of K.A.R. 30-63-28(f) and affirming SRS's decision ordering JCDS to affiliate with Alberta Brumley. Upon JCDS's motion, however, the district court stayed the ALJ's order pending review. JCDS then appealed to SRS's State Appeals Committee, which issued a final order on June 19, 2007, incorporating, adopting, and affirming the ALJ's order.

JCDS appealed SRS's final decision to the district court, contending the State Appeals Committee: (1) rendered incomplete findings of fact which were unsupported by the evidence and disregarded undisputed evidence; (2) erroneously interpreted K.A.R. 30-63-28(f); (3) erroneously concluded SRS's interpretation of the regulation was not subject to adjudication in the administrative proceeding; (4) failed to address whether SRS could waive the prohibition of K.A.R. 30-63-28(f); and (5) erred in failing to find that SRS implemented an improper procedure by requiring JCDS to affiliate with Alberta.

Following briefing, the district court issued a memorandum decision and order affirming the State Appeals Committee and denying JCDS's petition for relief.

JCDS appeals the district court's decision affirming SRS's final order requiring JCDS to affiliate with Alberta Brumley.

### I. DID THE DISTRICT COURT ERR IN AFFIRMING SRS's DE-CISION REQUIRING JCDS TO AFFILIATE WITH AL-BERTA BRUMLEY?

On appeal, JCDS asserts five arguments in support of its assertion that the district court erred in affirming SRS's decision requiring JCDS to affiliate with Alberta Brumley: (1) SRS failed to decide an issue requiring resolution, *i.e.*, whether Alberta Brumley possessed a known employment history of abuse, neglect, or exploitation; (2) SRS erroneously interpreted K.A.R. 30-63-28(f); (3) SRS employed an unlawful procedure in reaching its decision with respect to Alberta's affiliation; (4) SRS's determination was not supported by substantial competent evidence; and (5) SRS's determination was otherwise unreasonable, arbitrary, and capricious.

Judicial review of an administrative agency action is governed by the recently amended Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq.* See L. 2009, ch. 109, secs. 23-30; *Ninemire v. Kansas Dept. of SRS*, 284 Kan. 582, 585-86, 162 P.3d 22 (2007). K.S.A. 77-621(c) limits the scope of judicial review to specific, enumerated issues. The issues raised by JCDS are within our scope of review. See K.S.A. 77-621(c)(3), (4), (5), (7) and (8). In reviewing a district court's decision reviewing an agency action, we must first determine whether the district court followed the requirements and restrictions placed upon it and then make the same review of the administrative agency's action as does the district court. See *Jones v. Kansas State University*, 279 Kan. 128, 139, 106 P.3d 10 (2005).

After the filing of appeal briefs in this case, the legislature amended the KJRA effective July 1, 2009. See L. 2009, ch. 109, sec. 28 (amending K.S.A. 77-621). Because those changes were procedural rather than substantive, we apply them to cases pending as of the effective date of the legislation. See *Owen Lumber Co. v. Chartrand*, 276 Kan. 218, 222-23, 73 P.3d 753 (2003) (procedural legislative changes generally apply to pending cases unless substantive or vested rights are affected); *State v. Scott*, 28 Kan. App. 2d 418, 423, 17 P.3d 966 (2001) (applying clearly erroneous

standard to claim of jury-instruction error although new statutory standard was enacted posttrial).

As of July 1, 2009, when reviewing administrative actions to determine whether they are supported by substantial evidence, we must determine whether the agency's factual finding is supported "to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole." L. 2009, ch. 109, sec. 28(c)(7) (amending K.S.A. 77-621[c][7]). The phrase "in light of the record as a whole" requires that we judge the evidence supporting a particular finding of fact "in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record . . . cited by any party that supports such finding." See L. 2009, ch. 109, sec. 28(d) (amending K.S.A. 77-621[d]).

Further, when reviewing administrative actions for substantial evidence under K.S.A. 77-621(c)(7), we do not reweigh evidence or engage in de novo review. See L. 2009, ch. 109, sec. 28(d) (amending K.S.A. 77-621[d]).

As discussed below, although the legislative amendments altered our standard of review, the altered standard of review does not affect our decision in this case.

## A. SRS Has Not Properly Raised A Procedural Issue

In the introduction to the argument section of its response brief, SRS indirectly challenges JCDS's inclusion of the Board of County Commissioners of Johnson County (Board) in the case caption of its appeal brief and loosely suggests this raises a "jurisdictional" issue. SRS points out that the Board was not a party to the proceedings below, nor was it ever substituted for JCDS, and thus it is not a party to this appeal.

However, SRS has not moved to strike the Board from the caption of JCDS's brief, nor has SRS filed a cross-appeal from the district court's apparent failure to address the issue below. As such, the issue is not properly before this court. See K.S.A. 60-2103(h); Kansas Supreme Court Rule 5.01(a) (2008 Kan. Ct. R. Annot. 33). Moreover, we note that an appellant's designation of the case caption does not determine the parties to an appeal. See *Ryder v.*

*Farmland Mut. Ins. Co.*, 248 Kan. 352, 367-68, 807 P.2d 109 (1991).

Further, while subject matter jurisdiction may be raised at any time, *Vorhees v. Baltazar*, 283 Kan. 389, 397, 153 P.3d 1227 (2007), SRS cites no authority indicating the district court or this court was deprived of jurisdiction by the failure to designate the Board as a party.

Accordingly, we decline to consider this issue as it is not properly before the court.

## B. The District Court Did Not Err in Finding SRS Did Not Fail to Decide a Necessary Issue

Initially, JCDS argues that in overturning JCDS's denial of Alberta's affiliation application, SRS failed to explicitly determine whether K.A.R. 30-63-28(f) applied, *i.e.*, whether Alberta possessed a known employment history of abuse, neglect, or exploitation of a child or vulnerable adult.

JCDS's argument on this issue is convoluted at best, but it appears its argument is twofold. First, JCDS suggests that in the agency's initial letter decision directing JCDS to affiliate with Alberta Brumley, the agency failed to specifically determine whether K.A.R. 30-63-28(f) barred Brumley's application. Further, JCDS suggests the district court similarly failed to engage in a fact-finding process to determine whether K.A.R. 30-63-28(f), as applied to the facts developed by JCDS at the administrative level, barred Alberta's application.

### 1. Initial decision applied agency's interpretation of K.A.R. 30-63-28(f)

Regarding its first contention, JCDS points out that the initial letter decision by the SRS's Director of Community Supports and Services, Margaret Zillinger, dated June 3, 2005, failed to specifically find that Alberta Brumley "does *not* have a history of abuse, neglect or exploitation of children or vulnerable adults as prohibited by K.A.R. 30-63-28(f)." (Emphasis added.) Quoting from Zillinger's subsequent testimony, JCDS suggests that Zillinger's letter was less than direct because the Director and her staff had con-

cluded that Alberta Brumley *did* have a history of abuse, neglect, or exploitation.

First, we note our disagreement with JCDS's characterization of Zillinger's subsequent testimony. However, we need not look to that testimony to resolve this issue. Rather, the tenor of Zillinger's letter decision and the nature of the subsequent administrative proceedings amply demonstrate that JCDS understood the basis for the letter decision.

Specifically, Zillinger's letter recognized that affiliation status could be denied to a provider that violates the conditions of K.A.R. 30-63-28, and that JCDS relied on section (f) of the regulation to deny Alberta's application. The letter impliedly suggests the agency's disagreement with this interpretation, pointing out that JCDS relied upon "situations of *possible abuse*" and an expunged conviction "that was *not* 'abuse, neglect, or exploitation.'" (Emphasis added.) Further, the letter indicated that the Brumleys have met all of Jeremie's health and welfare needs since his adoption at a young age and directed JCDS to enter into an affiliate agreement with Alberta and conduct quality assurance activities regarding Jeremie's services.

Finally, the letter's conclusion suggests that the agency's disagreement with JCDS is based upon the agency's differing interpretation of the regulation. Zillinger concluded: *"In the case that* parties continue to interpret K.A.R. 30-62-28(f) [*sic*] to apply to this case, SRS has the option" pursuant to K.A.R. 30-63-20(b) to waive specific requirements and that it "would waive the specific provision of 'known history.'"

As Alberta Brumley concedes in her response brief, Zillinger's June 3, 2005, letter "arguably could have stated [the Director's] position more clearly." Nevertheless, it conveyed the basis for the agency's initial determination, as can be seen from the subsequent appeal proceedings.

For instance, in the prehearing order, the ALJ articulated two issues to be determined in the administrative appeal:

"The appellant (JCDS) appeals from the agency's decision requiring it to enter into an affiliate agreement with Alberta Brumley (intervener) [*sic*]. The appellant asserts Ms. Brumley has a history of abusing or neglecting children when she was

a foster parent 10-12 years ago. SRS claims none of these allegations were substantiated by SRS at the time, and Ms. Brumley's record has been clean since

. . . .

"Even if Ms. Brumley has a history of abusing or neglecting children under K.A.R. 30-63-29(f) [*sic*], SRS asserts it has the authority under K.A.R. 30-63-20 to waive this consideration, if good cause for waiving it can be shown."

Significantly, the record does not indicate that JCDS disputed the ALJ's characterization of the appeal as a challenge to the agency's application of K.A.R. 30-63-28(f) and, alternatively, to its application of K.A.R. 30-63-20(b).

Moreover, the ALJ ultimately adopted SRS's position, finding that an individual does not have a "known" history of abusing, neglecting, or exploiting children or vulnerable adults if the history is based on mere allegations or suspicions of abuse. Rather, the ALJ concluded that the "accused" must have had an opportunity to "litigate" the matter and present evidence before a neutral tribunal. However, the ALJ specifically noted that the December 2006 hearing at which the evidence presented to the ALJ was not such a forum.

The ALJ's decision was appealed to and affirmed by the Appeals Committee, and JCDS appealed this final decision to the district court. The district court ultimately affirmed the agency's determination, concluding that the term "known" means "more than alleged or even suspected." Further, the court adopted SRS's interpretation, finding " '[the term history] must embody a determination that from among conflicting pieces of information that either this version or that version is more likely to be the truth.' "

2. Additional fact-finding by the district court was unnecessary

JCDS further suggests that the district court's interpretation of K.A.R. 30-63-28(f) required that the court to consider evidence presented by JCDS at the hearing to determine whether Alberta had a "known" history of child abuse. Absent such a fact-finding process, JCDS argues the only basis for the agency's decision the court could consider was SRS's waiver argument, which the district court rejected and which ruling SRS has not appealed.

We find flaw, however, with JCDS's assertion that the district court's interpretation of the regulation required the court to make factual determinations regarding the significance of the evidence presented at the hearing. The district court accepted the agency's interpretation that a "conviction" of abuse, neglect, or exploitation of children or vulnerable adults was sufficient to bar employment of a provider under K.A.R. 30-63-28(f). Further, the court agreed with the agency that a "known" history of abuse, neglect, or exploitation of children or vulnerable adults means more than mere allegations or suspicions; rather, it embodies "a determination" made after both sides of an issue have been heard.

As discussed further below, JCDS failed to present any evidence that Alberta had a conviction or known history as defined by the agency and the district court. Thus, given the interpretation of the regulation, the district court did not err in failing to make additional factual findings regarding the evidence presented by JCDS.

Accordingly, we reject JCDS's contention that the district court erred in failing to find that SRS failed to resolve an issue requiring resolution.

## C. The District Court Did Not Err in Affirming SRS's Interpretation of K.A.R. 30-63-28(f)

JCDS next argues the district court erred in affirming SRS's interpretation of K.A.R. 30-63-28(f).

Administrative regulations promulgated within an agency's statutory authority have the force and effect of law. K.S.A. 77-425; *Tonge v. Werholtz*, 279 Kan. 481, 483-84, 109 P.3d 1140 (2005). We grant deference to an agency's interpretation of its own regulations and will not disturb the agency's interpretation unless it is clearly erroneous or inconsistent with the regulation. *Tonge*, 279 Kan. at 484. Nevertheless, because the interpretation of a regulation is a question of law, we are not bound by the district court's judgment. See *Murphy v. Nelson*, 260 Kan. 589, 594, 921 P.2d 1225 (1996).

K.A.R. 30-63-28(f) states:

"A provider shall not employ any individual who is known by a provider to have had a conviction for or a prior employment history of abuse, neglect, or exploitation of children or vulnerable adults."

JCDS does not not dispute that this regulation was promulgated within SRS's statutory authority to protect vulnerable persons within the State of Kansas. See K.S.A. 39-1810 ("The secretary may adopt rules and regulations to carry out the provisions of this [Developmental Disabilities Reform Act (DDRA), K.S.A. 39-1801 *et seq.*]."). Pertinent to the regulation in question, K.S.A. 39-1804 notes that a primary policy of the DDRA is to provide persons with developmental disabilities "protection from abuse, neglect and exploitation." Clearly, K.A.R. 30-63-28(f) promotes this policy and, therefore, lies within SRS's regulation-making authority.

The district court affirmed SRS's interpretation of the term "known" in K.A.R. 30-63-28(f) to " 'mean more than merely alleged or even suspected' " and to " 'embody a determination that from among conflicting pieces of information that either this version or that version is more likely to be the truth.' " In doing so, the court pointed out that JCDS argued that the word "known" should mean " 'to have knowledge; to be or become cognizant.' " The district court correctly concluded that "in essence," JCDS sought substitution of its interpretation for that of the agency's. However, giving deference to the agency's interpretation, as it was required to do, the district court found the agency's interpretation to be rational and appropriate.

JCDS's argument on appeal is again unclear. Primarily, JCDS reiterates its assertion that the word "known" is an "intrasitive [form of the] verb 'know' which is defined as 'to have knowledge; to be or become cognizant.' " Yet JCDS fails to explain the significance of its proposed definition. Nor does JCDS suggest that its definition would alter or modify SRS's interpretation of the regulation, which was adopted by the district court. In fact, JCDS even concedes in its appeal brief that SRS's interpretation of the regulation is "not necessarily inconsistent" with the regulation's terminology.

Essentially, it appears JCDS disagrees with the concept that the term "known" embodies a "determination" made after consideration of conflicting evidence. Instead, JCDS implies that the term simply requires consideration of information of which the provider

is aware, which would include reports of suspected and alleged abuse, neglect, or exploitation.

However, the distinction between *suspicions* or *allegations* of abuse, neglect, or exploitation and a *known history* of such actions is apparent when subsection (f) is viewed in the context of K.A.R. 30-63-28 in its entirety. For instance, subsection (a) requires that a provider conduct an investigation when any abuse, neglect, or exploitation is *suspected* and *immediately* take appropriate action to ensure that persons involved are protected during that investigation. Subsection (c) requires that a provider educate its personnel on how to contact the appropriate state agency when abuse, neglect, or exploitation is *suspected* or witnessed. Subsection (d) details the manner in which providers are to report any incident of *suspected* abuse, neglect, or exploitation and dictates that the report is to be made *"immediately."* Finally, subsection (e) requires provider agents to cooperate fully with any state agency conducting an investigation resulting from a *report* of abuse, neglect, or exploitation.

The various subsections of K.A.R. 30-63-28 clearly differentiate between "suspected" or alleged conduct, which triggers a provider's obligations to report an investigate an individual and a "known" history of such conduct, which bars a provider from employing the individual. Simply said, if suspected or reported abuse, neglect, or exploitation was sufficient to permit a provider to deny affiliate status or other employment, the agency could have utilized that same term in section (f).

Thus, we conclude the term "known" in K.A.R. 30-63-28(f), which prohibits employment of an individual known to have had a conviction for or a prior employment history of abuse, neglect, or exploitation of a child, means more than merely alleged or even suspected. Rather, it contemplates abuse, neglect, or exploitation that has been substantiated or confirmed after all parties have had an opportunity to present evidence and a determination has been made from conflicting evidence.

Finally, we note that JCDS does not directly challenge the application of K.A.R. 30-63-28(f) in its discussion of this issue, presumably because it contends in the previous issue that the agency

failed to apply the regulation to the facts developed here. Nevertheless, it impliedly challenges the application of the regulation when it suggests that even if the regulation requires a determination made after consideration of conflicting evidence, the regulation was satisfied here. JCDS points to testimony given at the evidentiary hearing before the ALJ in December 2006 and suggests that because this was a "quasi-judicial" proceeding, the ALJ's decision embodied a determination made after presentation of conflicting evidence.

Presumably, JCDS is referring to Jennifer Bustamonte's testimony at the administrative hearing regarding abuses she claimed to have witnessed during the 1-year period she was with the Brumleys in 1984-85. Regarding this testimony, JCDS asks the rhetorical question, "If JCDS could not challenge Mrs. Brumley's eligibility to become its affiliate at the December 2006 hearing, when, then, could it do so?"

As Alberta aptly points out in her appeal brief, any allegations of abuse JCDS relied upon as "known history" at the appeal hearing should have been "known" by the time JCDS initially denied Alberta's application on the basis of the regulation. This interpretation is consistent with several sections of K.A.R. 30-63-28, which as we have noted, require that providers "immediately" respond and investigate suspected or reported abuse.

Thus, we agree that a known history of abuse, neglect, or exploitation under K.A.R. 30-63-28(f) does not encompass testimony made at the administrative hearing regarding previously unsubstantiated or unconfirmed claims. Specifically, in this instance, "known history" did not include testimony or information presented at the administrative hearing regarding abuse allegedly occurring during a 1-year period in the 1980's.

Giving deference to SRS's interpretation of its own regulation, as we must, we conclude the district court did not err in finding SRS's definition to be consistent with the regulation and not clearly erroneous.

D. The District Court Did Not Err in Finding SRS Did Not Employ an Unlawful Procedure In Overruling JCDS's Denial of Affiliation Status

JCDS next contends the district court erred in failing to find that SRS did not comply with procedural requirements in overruling JCDS's denial of Alberta's affiliation application.

JCDS's argument again appears to be two-pronged. First, it contends the agency erred in failing to conduct a hearing prior to rendering its initial decision overruling JCDS's denial of Alberta's application. Second, it suggests that if the December 2006 administrative hearing constituted JCDS's "fair hearing," then the ALJ erred in refusing to consider uncontroverted testimony presented by JCDS at the hearing.

1. Initial agency decision did not require hearing.

JCDS recognizes that K.A.R. 30-64-32 requires JCDS and other Community Development Disability Organizations (CDDO) to implement dispute resolution procedures and establishes the procedure under which certain parties affected by the CDDO's decisions may appeal. JCDS also concedes that Alberta and Jeremie followed the applicable procedures by appealing the denial of Alberta's affiliation application to SRS. However, JCDS challenges SRS's refusal to conduct a hearing before initially overruling JCDS's affiliation determination.

A plain reading of the applicable regulations undermines JCDS's argument. K.A.R. 30-64-32 provides that any procedures implemented by JCDS, or similar CDDOs, will create a right of appeal by any party to either the governing body of the CDDO, if the dispute involves the CDDO, or the Commission (defined by K.A.R. 30-63-1(3) as the division of mental health and developmental disabilities of SRS), if the dispute does not involve the CDDO or if the appeal to the governing body of the CDDO has not resolved the dispute.

Here, when JCDS denied Alberta's application for affiliation, DRC, on behalf of Jeremie, appealed the decision to the governing body of JCDS, the Johnson County Council of Community Members. When the Council declined to hear the appeal, reasoning it

lacked authority to interpret an SRS regulation, Jeremie appealed to Zillinger as the "commissioner." Zillinger reviewed JCDS's basis for the affiliation determination and resolved the dispute by ordering JCDS to affiliate with Alberta Brumley. JCDS appealed this decision.

Therefore, contrary to JCDS's appeal argument, the appropriate regulatory procedure was followed in this case. Moreover, K.A.R. 30-64-32 does not require a fair hearing until after the Commission has decided the dispute:

"The authority to review the dispute and make an appropriate decision shall be reserved by the commission to assist the parties in resolving the dispute and preventing similar disputes in the future, including by requiring changes of policies, procedures, or practices of community service participants; by requiring corrective action or a peer review process by community service participants; or by using other resolution guidelines. The decision of the division may be appealed to the office of administrative appeals with the Kansas department of administration *pursuant to article 7*." (Emphasis added.) K.A.R. 30-64-32(c)(3)(B).

Thus, K.A.R. 30-64-32(c)(3)(B) specifically provides for a fair hearing following the Commission's decision pursuant to Article 7, which includes regulations regarding fair hearing appeals. See K.A.R. 30-7-64 *et seq*. However, that regulation does not require a hearing before the Commission renders its ruling. See *In re Tax Application of Lietz Constr. Co.*, 273 Kan. 890, 911, 47 P.3d 1275 (2002) (applying the canon of statutory construction, *expressio unius est exclusio alterius*, *i.e.*, a court may presume the inclusion of one thing implies the exclusion of another). Consequently, JCDS has failed to demonstrate that SRS implemented an unlawful procedure in rendering its initial decision regarding Alberta's affiliation status.

2. The ALJ did not err in refusing to consider testimony at hearing.

Alternatively, JCDS contends if the administrative hearing in December 2006 constituted JCDS's fair hearing, then the ALJ erred in refusing to consider uncontroverted testimony presented by JCDS at that hearing regarding its assertion that Alberta had a known history of abuse.

Specifically, JCDS points to the testimony of Jennifer Busta-monte, who related specific acts of abuse committed by Alberta. JCDS argues that because Bustamonte was subject to cross-examination at a fair hearing, the ALJ should have made a credibility determination to confirm or dispel the allegations of abuse presented by Bustamonte.

However, applying SRS's interpretation of K.A.R. 30-63-28(f), the ALJ reasoned that the information produced by JCDS at the hearing involved only accusations, reports, and allegations of abuse, neglect, and exploitation committed by Alberta during her time as a foster parent. Like the documentary evidence presented at the hearing, Bustamonte's testimony did not constitute a known history of abuse, neglect, or exploitation. Further, the ALJ concluded that the administrative hearing was not the proper forum to adjudicate the allegations of abuse.

The district court affirmed this rationale, finding that the administrative proceeding was not an appropriate forum in which to adjudicate allegations of abuse. Rather, the hearing was designed to determine whether the agency properly overruled JCDS's denial of Alberta's affiliation application. The denial of the application, under the justification provided by JCDS, was proper only if Alberta had a known history of abuse, neglect, or exploitation at the time JCDS made its determination.

We agree with this analysis. As a practical matter, the use of the administrative proceeding in this case to adjudicate abuse allegations was inappropriate for two reasons. First, the narrow purpose of the administrative hearing was to determine the reasonableness of the agency's decision to overrule JCDS's denial of the application—a denial which was based upon evidence of Alberta's alleged "known history" at the time of the decision. Thus, even if the ALJ had made a credibility determination regarding evidence of abuse presented at the hearing, that determination could not have assisted JCDS at the time it denied Alberta affiliation status based upon its interpretation of the regulation. Second, it is fundamentally unfair to adjudicate abuse allegations made more than 20 years earlier involving abuse occurring as much as 30 years earlier, par-

ticularly when these allegations were investigated but never substantiated when made.

Under the circumstances of this case and in light of the limited purpose of the administrative hearing, we conclude the ALJ did not err in refusing to consider testimony regarding allegations of abuse which were not substantiated at the time JCDS denied Alberta's application.

### E. The District Court Did Not Err in Finding SRS's Decision Was Supported by Substantial Evidence

In a related argument, JCDS next contends that in determining whether Alberta had a known history of abuse, neglect, or exploitation, the ALJ erred in disregarding uncontroverted facts presented by JCDS and considering only the significance (or lack thereof) of Alberta's expunged misdemeanor conviction. Thus, JCDS argues the agency's decision was not supported by substantial evidence.

As discussed, to determine whether SRS's decision is supported by substantial evidence, we must determine whether the agency's factual findings are "supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole." See L. 2009, ch. 109, sec. 28(c)(7) (amending K.S.A. 77-621[c][7]). "In light of the record as a whole" means we must judge the evidence supporting a particular finding of fact "in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record . . . cited by any party that supports such finding." See L. 2009, ch. 109, sec. 28(d) (amending K.S.A. 77-621[d]).

JCDS argues the ALJ disregarded undisputed evidence of abuse presented at the administrative hearing. However, as discussed, the ALJ did not simply "disregard" such evidence without reason. Rather, the ALJ correctly ruled as a matter of law that SRS's interpretation of K.A.R. 30-63-28(f) did not permit consideration of unconfirmed or unsubstantiated instances of abuse, neglect, or exploitation.

Nevertheless, citing *Winston v. Kansas Dept. of SRS*, 274 Kan. 396, 49 P.3d 1274, *cert. denied* 537 U.S. 1088 (2002), JCDS con-

tends unsubstantiated evidence may be used to establish abuse. In *Winston*, SRS prosecuted an administrative proceeding to substantiate allegations of abuse. On appeal, Winston argued the administrative hearing officer improperly allowed testimony related to unsubstantiated instances of abuse discovered in the course of the investigation. Our Supreme Court held:

"[I]f Winston's argument were adopted, SRS would be required to ignore any evidence discovered during the investigation that related to prior unsubstantiated or even unreported allegations of abuse. This would be an illogical result. Section 2324 of the PPM [Children and Family Services Policy and Procedure Manual] does not prohibit SRS from using things discovered during investigation of a specific incident. Winston had access to SRS investigative files. Sarah Byall testified in her deposition that Winston was validated because he satisfied all the above quoted bases for validating a perpetrator under Section 2324 of the PPM. There is no indication that any of the evidence presented at the hearing was a surprise. Thus, there is nothing that would preclude this information from *being used to substantiate and validate* a perpetrator where the alleged perpetrator had notice of the information." (Emphasis added.) *Winston*, 274 Kan. at 415.

Thus, the purpose of the administrative hearing in *Winston* was to determine whether the evidence supported SRS's determination that Winston had committed specific acts of abuse. In contrast, the purpose of the administrative proceeding here was to determine whether SRS erroneously concluded that Alberta Brumley did not have a "known" history of abuse at the time JCDS denied her affiliation application.

Finally, although the parties have not supplemented their briefs or discussed application of the KJRA's recently revised standard of review, we do not believe that standard significantly impacts our decision today. The KJRA now requires that we consider all *relevant* evidence that detracts from the agency's finding as well as *relevant* evidence supporting an agency's finding. As discussed, the unsubstantiated and unconfirmed documentary information and testimony presented by JCDS at the December 2006 administrative hearing was not "relevant" to a determination of whether Alberta Brumley had a "known" history of abuse under the agency's definition of K.A.R. 30-63-28(f). Thus, it need not be considered in determining whether the agency's decision was supported by substantial evidence.

The district court did not err in refusing to consider evidence of 20-to 30-year-old unsubstantiated and unconfirmed allegations of abuse against Alberta Brumley in determining whether the agency's decision was supported by substantial evidence.

### F. The District Court Did Not Err in Finding SRS's Decision Was Not Otherwise Arbitrary or Capricious

Finally, in another related argument, JCDS contends SRS's decision was arbitrary and capricious because SRS ordered JCDS to affiliate with Alberta despite Alberta's known history of abuse, neglect, or exploitation. In support of this contention, JCDS adopts and incorporates by reference the argument and authorities supporting its assertion that the decision was not based upon substantial evidence. In light of our preceding determinations, this argument lacks merit.

The judgment of the district court affirming SRS's decision overruling JCDS's denial of Alberta Brumley's application for affiliate status is affirmed.

Affirmed.