(281 P.3d 534)
No. 104,769[1]

STATE OF KANSAS *ex rel.* RODERICK L. BREMBY, Secretary, Kansas Department of Health and Environment, *Appellee,* v. LINDEMUTH, INC., *Appellant.*

Opinion filed July 22, 2011.

*Benoit M.J. Swinnen,* of Topeka, for appellant.

*Paul Gerard Marx,* of Kansas Department of Health and Environment, for appellee.

Before GREEN, P.J., MARQUARDT and ATCHESON, JJ.

GREEN, J.: In this civil enforcement action, Lindemuth, Inc., appeals the trial court's decision to enforce the administrative order entered by the Kansas Department of Health and Environment (KDHE). On appeal, Lindemuth argues that the trial court erred in finding that the term "accounting" is synonymous with the term "invoice." We disagree. Accordingly, we affirm.

---

[1]**REPORTER'S NOTE:** Previously filed as an unpublished opinion, the Supreme Court granted a motion to publish pursuant to Rule 7.04 (2011 Kan. Ct. R. Annot. 57). The published version was filed with the Clerk of the Appellate Courts on June 6, 2012.

*Administrative Action*

On July 23, 2004, KDHE issued an Administrative Order that required Lindemuth to reimburse "Response Costs" to KDHE within 30 days from receipt of an accounting. The Order defined "Response Costs" as follows: "[A]ll costs, including direct costs, indirect costs, enforcement costs and accrued interest incurred by (or on behalf of) KDHE to perform or support response actions at the Site. Response costs include, but are not limited to, the costs of overseeing work at the Site, such as the costs of reviewing plans, reports and/or other items pursuant to this Order and costs associated with verifying the implementation of this Order." The Administrative Order allowed for Lindemuth to request a hearing to appeal the Order, which Lindemuth did not do.

KDHE periodically sent Lindemuth invoices for these response costs. Lindemuth complied with the Order from 2004 through 2007 and paid each invoice without any objection. After Lindemuth failed to pay the invoices from January 1, 2008, through August 15, 2009, KDHE sent demand letters to get Lindemuth to comply with the Order. KDHE and Lindemuth attempted to negotiate a payment plan, but Lindemuth failed to comply with the plan. As a result, on October 21, 2009, KDHE filed a petition for civil enforcement of final agency action.

*Trial Court Action*

KDHE filed a brief in support of its petition on March 26, 2010. Lindemuth filed a response brief on April 21, 2010, and KDHE filed a reply on April 27, 2010. Lindemuth argued that KDHE failed to provide proper accounting as required by the Order and, therefore, KDHE should not be allowed to collect based on the invoices alone. Lindemuth maintained that the invoices it received did not qualify as an accounting, which it was entitled to under the Order. The trial court disagreed with Lindemuth and ordered Lindemuth to pay the outstanding invoices. The trial court found that based on the plain language of the Order, the term "accounting," as intended by KDHE, was synonymous with the term "invoice." Lindemuth timely appealed the trial court's memorandum decision and order.

*Whether the Term "Accounting" Is Synonymous with the Term "Invoice"*

Lindemuth argues that it was entitled to an accounting based on the Order and that the additional information that KDHE provided did not comply with the Order. Lindemuth contends that the invoices contained contradictions and were inconsistent, and, therefore, they could not meet the standard of an accounting as required by the Order. Lastly, Lindemuth maintains that the trial court did not have enough evidence to reach a conclusion based on the record alone and that it should have conducted an evidentiary hearing.

When an appellate court reviews a trial court's decision reviewing an agency action, it must first determine whether the trial court followed the requirements and restrictions placed upon it and then make the same review of the administrative agency's action as the trial court. See *Johnson Co. Developmental Supports v. Kansas Dept. of SRS*, 42 Kan. App. 2d 570, 577, 216 P.3d 658 (2009). Neither the appellate court nor the trial court may try the case de novo and substitute its judgment for that of KDHE. See *In re Certif. of Need App. by Community Psychiatric Centers, Inc.*, 234 Kan. 802, 806, 676 P.2d 107 (1984). An appellate court should grant deference to an agency's interpretation of its own regulations and will not disturb the agency's interpretation unless it is clearly erroneous or inconsistent with the regulation. See *Tonge v. Werholtz*, 279 Kan. 481, 484, 109 P.3d 1140 (2005).

The issue before us is the interpretation of the term accounting, as used in the Administrative Order, and whether the invoices sent by KDHE comply with the meaning of that term.

Although no recent Kansas case has specifically addressed this issue, a similar situation arose in *Jones v. Kansas State University*, 279 Kan. 128, 106 P.3d 10 (2005), where the parties were arguing over the interpretation of the terms "gross misconduct." The terms were not defined in the statute so our Supreme Court declined to adopt a single definition for the terms. Our Supreme Court held that although the definition might be one factor to consider, the terms are best defined by their dictionary meanings, within the context of the civil service statute, by reviewing other cases inter-

preting similar terms, and by examining the totality of circumstances. 279 Kan. at 148-51.

As no recent Kansas case discusses or interprets the term "accounting" or "invoice," we examine all of the resources set forth in *Jones* in resolving this issue. No question exists as to whether Lindemuth received an invoice for KDHE's services; rather, the critical issue is whether those invoices constitute an accounting of KDHE's services, as stated in the Order.

In support of its argument, Lindemuth directs us to *Leslie v. Pine Crest Homes, Inc.*, 388 So. 2d 178, 182 (Ala. 1980), which cites to *Kansas City v. Burns*, 137 Kan. 905, 22 P.2d 444 (1933), and Black's Law Dictionary 17, 18 (5th ed. 1979). *Burns*, however, cites to a Webster's dictionary definition of the term "accounting" that is no longer current. See *Kansas City*, 137 Kan. at 912. Because the definition in *Burns* is outdated, Lindemuth's reliance on *Kansas City* and *Leslie* is misplaced.

Currently, Black's Law Dictionary 22 (9th ed. 2009) defines "accounting" as "[t]he act or a system of establishing or settling financial accounts; esp., the process of recording transactions in the financial records of a business and periodically extracting, sorting, and summarizing the recorded transactions to produce a set of financial records. . . . More broadly, an action for the recovery of money for services performed, property sold and delivered, money loaned, or damages for the nonperformance of simple contracts." Webster's defines "accounting" as "[t]he bookkeeping methods involved in making a financial record of business transactions and in the preparation of statements concerning the assets, liabilities, and operating results of a business." Webster's II New Riverside University Dictionary 72 (1984).

In addition, Black's Law Dictionary 904 (9th ed. 2009) defines "invoice" as "[a]n itemized list of goods or services furnished by a seller to a buyer, usu. specifying the price and terms of sale; a bill of costs." Webster's defines "invoice" as "[a]n itemized list of goods shipped or services rendered, with an *account* of all costs." Webster's II New Riverside University Dictionary 642 (1984).

Application of the dictionary definitions, the caselaw listed earlier, and an examination of the Administrative Order, all support

the conclusion that the trial court correctly interpreted the term "accounting" to be synonymous to the term "invoice."

Additionally, we draw further guidance from the decision of *Johnson Co. Developmental Supports (JCDS)*, 42 Kan. App. 2d 570, dealing with an agency interpretation. In *JCDS*, there was a dispute over the agency's interpretation of the term "known." 42 Kan. App. 2d at 582. The trial court determined that JCDS was attempting to substitute its interpretation for that of the agency's. This court affirmed the trial court's conclusion that in giving deference to the agency's interpretation, as it was required to do, the trial court properly found the agency's interpretation to be rational and appropriate. 42 Kan. App. 2d at 583.

Our case is similar to *JCDS*. Like *JCDS*, Lindemuth is attempting to substitute its interpretation of the term "accounting" for that of KDHE's interpretation. Also, like *JCDS*, the trial court gave deference to the agency's interpretation, when it ruled in KDHE's favor.

Based on the plain language of the Order, the dictionary definitions, and the relevant caselaw, we conclude that the trial court properly upheld KDHE's interpretation of the term "accounting" in the Administrative Order.

Moreover, KDHE's argument that Lindemuth is estopped from objecting to the invoices has merit. "Estoppel involves an assertion of rights inconsistent with past conduct, silence by those who ought to speak, or situations where it would be unconscionable to permit persons to maintain a position inconsistent with one in which they have already acquiesced." *Schraft v. Leis*, 236 Kan. 28, 36, 686 P.2d 865 (1984).

Lindemuth acquiesced to the form of the invoices by paying them for years without objection. Lindemuth paid the invoices for 3 years before raising an issue to the adequacy of the invoices. Based on Lindemuth's past conduct of paying the invoices, it is now estopped from objecting to the invoices.

In addition, we reject Lindemuth's argument that the trial court should have conducted an evidentiary hearing for two reasons: (1) the issue was not raised below; and (2) the parties agreed in the

case management order that no additional discovery would be allowed and that the case would be decided on the record.

Affirmed.

\* \* \*

ATCHESON, J., concurring: I concur in the judgment affirming the district court and denying relief to Lindemuth, Inc. I do so, however, on considerably more narrow grounds than does the majority.

Essentially, Lindemuth takes issue with a limited portion of an administrative order the Kansas Department of Health and Environment entered to effect cleanup of hazardous materials. Every 3 months, the Department was to submit to Lindemuth "an accounting" of agency costs incurred in the cleanup, according to the order. In turn, Lindemuth had 30 days from receipt of an accounting to reimburse the Department for those costs. The Department submitted what it entitled invoices to Lindemuth for payment. Between mid-2004, when the order was entered, and May 2008, Lindemuth paid the amounts billed. Beginning with the May 15, 2008, invoice, Lindemuth simply stopped paying. The Department filed this action to collect the amounts due as of August 2009. The face amount of the unpaid invoices totals about $25,000.

In response to the Department's enforcement action, Lindemuth claimed that the invoices it received failed to include sufficient detail to be "accountings," as required by the administrative order, and argued it should be given more detailed records verifying the details of the costs. Lindemuth had not made any earlier complaints about the content of the unpaid invoices or the ones it did pay. The district court remanded some specific items to the Department for clarification or further proceedings. According to the parties, those items have been resolved and are no longer in issue. The district court otherwise found for the Department. Lindemuth has appealed.

The administrative order sets forth no particular time period or procedural mechanism for Lindemuth to raise questions or lodge complaints about the quarterly invoices or accountings from the

Department. But Lindemuth is to pay within 30 days. In the absence of any specified time, a court may infer that the order contemplated a "reasonable" period for Lindemuth to assert any problems it might have had with the billing documents. See *Cerabio LLC v. Wright Med. Tech.*, 410 F.3d 981, 996 (7th Cir. 2005) ("[I]f a contract does not specify a time period for performance, the court will infer a reasonable time for performance.") (applying Delaware law); *Young v. Reynolds Metals Co.*, 685 F.2d 1091, 1093 (9th Cir. 1982) (contracts will imply reasonable time, applying Oregon law); *Gilliland v. Board of Review*, 298 N.J. Super. 349, 353, 689 A.2d 781 (1997) (When a statute fails to include an express time limit, "a reasonable period" should be inferred.). I needn't attempt to fashion a reasonable time. But I would venture that Lindemuth should have been able to ascertain and present any concerns about a given invoice in the 30 days before payment came due. And I have no doubt that a reasonable time would be considerably shorter than the year or more some of the invoices languished before the Department filed this enforcement action. I would affirm on the ground that Lindemuth exceeded any allowable time to make objection to the amounts the Department submitted to it for payment.

I do not understand the Department to contend that Lindemuth had no right to make a *timely* inquiry or objection to particular items included in a given invoice. Such a position would implicate due process and unlawful takings considerations. It also would be inconsistent with the requirement in the order for an accounting. If the Department could put little or no descriptive information in the invoices or include plainly improper costs and Lindemuth could not question those matters, the requirement for an accounting would be drained of any meaning or purpose. I do not read K.S.A. 77-625, governing administrative enforcement actions, to be otherwise. If the invoiced costs were outside the scope of the order, Lindemuth would not have violated the order by timely questioning their inclusion or refusing to pay them. See K.S.A. 77-625(b) (A party may defend in a civil enforcement action on the grounds it has not violated the [administrative] regulation or order."). Had Lindemuth *incorrectly* challenged items properly in-

cluded and delayed payment in violation of the order, it might well have been liable for interest or other penalties. See K.S.A. 77-625(c). But those are not the circumstances here.

I disagree with the majority's view that an "accounting" and an "invoice" are synonymous or necessarily contain the same information, particularly for purposes of this administrative order. An invoice basically constitutes a bill; it states an amount owed and payable, although it may contain additional information such as terms of sale or a list of items sold. An accounting contains more detailed information, as the definitions cited in the majority opinion indicate. While there may be some overlap in phraseology or the words used to define the two terms, I find the dueling dictionaries approach to be an unpersuasive demonstration that an invoice and an accounting are identical or interchangeable.

Here, an accounting would present the costs and contain enough information to describe generally the work or materials included in the costs and to show that they came within the scope of the cleanup directed in the order. For the most part, the invoices the Department sent Lindemuth did so. But some of the entries consisted of what we in the legal profession sometimes call block billing—an entry identifying a person, a number of hours, and little or no description of the work. In some instances, the invoices attribute more than 100 hours of work to a named individual with no verbal description and only a numerical code. While that might suffice as an invoice, it is something short of an accounting. But Lindemuth did nothing on receiving those invoices. It neither objected nor paid. The time to object has long passed so the time to pay is at hand.

The Department has argued that as an administrative agency it should be given broad deference as to the construction and interpretation it places on the order. And (not surprisingly) the Department says its invoices demonstrated crackerjack compliance with the accounting requirement. The majority accepts that rationale as further support for the outcome here. I don't.

Judicial deference to agency actions, particularly in the form of administrative regulations and to some lesser extent case specific orders, is a settled doctrine with a sound public policy foundation.

Over the last 100 years, government at both the state and federal levels has taken on a greater role in regulating what may broadly be considered social and economic practices and relationships. That includes such disparate matters as regulation of union-management interaction and some terms and conditions of employment in many industries; protection against fraudulent and unduly speculative practices in the banking and securities fields; and implementation of a social safety net providing modest disability and retirement income and essential health care. More recently, protection of the environment has similarly become a task for government, as the genesis of this case demonstrates. Much of that government action has been implemented through fairly general legislative enactments creating administrative agencies charged with developing detailed regulatory schemes and special expertise to implement the resulting regulations.

When legal disputes have arisen in those areas, the courts have recognized the wisdom of deferring to the developed expertise of such agencies. As the United States Supreme Court has explained:

"An agency's expertise is superior to that of a court when a dispute centers on whether a particular regulation is reasonably necessary to effectuate any of the provisions or to accomplish any of the purposes of the Act the agency is charged with enforcing; the agency's position, in such circumstances, is therefore due substantial deference." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 845, 106 S. Ct. 3245, 92 L. Ed. 2d 675 (1986).

The United States Court of Appeals for the Tenth Circuit recently noted: "[T]he principle of deference to an agency's sphere of expertise continues to guide our review." *Southern Utah Wilderness v. Office of Surface Min.*, 620 F.3d 1227, 1236 (10th Cir. 2010). The Kansas appellate courts take a similar view, particularly with regard to agency regulations. *Tonge v. Werholtz*, 279 Kan. 481, 484, 109 P.3d 1140 (2005); *Johnson Co. Developmental Supports v. Kansas Dept. of SRS*, 42 Kan. App. 2d 570, 582, 216 P.3d 568 (2009) ("We grant deference to an agency's interpretation of its own regulations[.]"). The issues being litigated often entail engineering or scientific considerations or similarly complex specialties within the ken of the agencies that almost of necessity require judicial deference to avoid serious unintended consequences from

doing otherwise. See *Southern Utah Wilderness*, 620 F.3d at 1235-36; *New York v. United States Nuclear Regulatory Com'n*, 589 F.3d 551, 555 (2d Cir. 2009).

But judicial deference is neither unlimited nor blind. Courts need not accept agency positions or interpretations unconnected to that special expertise. *NJ Environmental Protection v. United States Nuclear Com'n*, 561 F.3d 132, 136 n.4 (3d Cir. 2009) (Legal issues that do not turn on the agency's expertise require no particular deference.); *Dantran, Inc. v. United States Dept. of Labor*, 246 F.3d 36, 48 (1st Cir. 2001) ("Agency regulations interpreting a statute that relates to matters outside the agency's area of expertise are entitled to no special deference."). Courts actually abdicate their responsibility to interpret and apply the law if they defer to administrative agencies on general legal issues.

Had Lindemuth challenged the cleanup regimen the Department implemented in the order, agency expertise would have been implicated. This court should give considerable deference to that plan. Rightfully so. But Lindemuth's issue here is altogether different. It says the invoices it received had too little information to amount to accountings, as stated in the agency order. The Department has no particular expertise in determining what constitutes an accounting. The term is not one peculiar to environmental protection—the majority's use of legal and regular dictionaries to gauge its meaning demonstrates that much. In turn, we have no reason to accord the Department's assertion that it complied with that portion of the order any special consideration.

Allowing the Department or other agencies to define as they choose common or even specialized terms divorced from their particular expertise has no antecedent in the doctrine of administrative deference. That is particularly true when the terms are used in case specific orders and deal with a matter common to all kinds of disputes, all kinds of agreements, and all kinds of parties. Humpty Dumpty pronounced that beyond the looking glass, "When I use a word, it means just what I choose it to mean—neither more nor less." *www.literature.org/authors/carroll-lewis/through-the-looking-glass/chapter-06.html*. Administrative agencies here haven't the same prerogative.