No. 93,329

JOSEPH TONGE, *Appellee,* v. ROGER WERHOLTZ, *et al.,*
*Appellants.*
109 P.3d 1140

 Opinion
filed April 22, 2005. 

*Linden G. Appel,* of Kansas Department of Corrections, argued the cause, and *Kenneth R. Smith,* special assistant attorney general, was on the brief for appellants.

*Charles J. Cavenee,* of Legal Services for Prisoners, Inc., of Lansing, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: The Kansas Department of Corrections (DOC) appeals the district court's ruling that it does not have authority to collect disciplinary restitution from Joseph Tonge, who was released from incarceration but was returned to custody based on his commission of later offenses.

Tonge was incarcerated under the control of the DOC when he escaped on July 15, 1998, from the Ellsworth Correctional Facility while on a work detail in Saline County. The following day, he was charged with a disciplinary violation. He was subsequently apprehended and returned to custody. Tonge was found guilty of the disciplinary violation and ordered by the disciplinary board to pay restitution for the costs of $1,956.75 incurred by the State in regaining his custody.

Tonge appealed the restitution order through the DOC administrative proceedings to the district court, which upheld the assessment of prison restitution but reduced the amount to $1,104.68. The DOC appealed the reduction, and Tonge cross-appealed, contending the amount of the reduction was insufficient. The Court of Appeals affirmed the trial court's order in a published opinion filed September 15, 2000. Review was denied by this court effective December 20, 2000. *Tonge v. Simmons,* 27 Kan. App. 2d 1048, 11 P.3d 77, *rev. denied* 270 Kan. 904 (2000) (*Tonge I*).

Tonge continued to be incarcerated under the control of the DOC until he completed his guidelines sentence, when he was released to a detainer filed by Saline County based on the July 1998 escape charges. Tonge was released on bond on the Saline County criminal escape charges on September 22, 2000.

On or around January 10, 2001, Tonge absconded from his bond and postrelease supervision. He was returned to prison as a technical postrelease violator on September 12, 2001. Ten days later, he was released to Saline County for the criminal escape case and, on February 23, 2001, he was sentenced in that case. On May 1, 2001, Tonge was back in the DOC's custody at Hutchinson Correctional Facility to serve the escape sentence. He served this sentence until he was guidelines released on March 19, 2002. While he was incarcerated, Tonge paid $290.64 towards his disciplinary restitution, leaving an unpaid balance of $814.04.

Tonge was charged with new offenses in Geary County District Court occurring on or around February 23, 2003. Tonge was discharged from the old sentence, including the Saline County escape conviction, on May 29, 2003. He was sentenced in Geary County District Court for the 2003 offenses on June 6, 2003, and returned to DOC custody in prison to serve those sentences on June 19, 2003.

Upon return to incarceration in June 2003, the DOC garnished Tonge's trust account to pay the prison restitution previously ordered, leaving him unable to expend funds at the prison canteen or for publications. Tonge filed two grievances complaining of the garnishment of his account, but the DOC denied them. Tonge exhausted his administrative remedies and filed a K.S.A. 2004 Supp. 60-1501 petition with the district court requesting a determination that the restitution order was "unfair, unjust, improper, and not moderate for petitioner's living conditions" and seeking an order setting it aside.

The district court concluded the DOC lacked authority to collect restitution from Tonge because K.A.R. 44-12-1306(a)(3), upon which the DOC relies to support its position, was not an effective regulation until after Tonge had completed his sentence. The district court enjoined the DOC from withholding funds belonging to Tonge for setoff or payment of restitution. The DOC appealed to the Court of Appeals, and the case was transferred to our court pursuant to K.S.A. 20-3018(c).

This appeal involves the application of a change in the wording of administrative regulations, which have the force and effect of

law. See K.S.A. 77-425. Administrative regulations such as the one in issue adopted by the DOC must be within the agency's statutory authority, as it acts as a political subdivision exercising delegated legislative power. See *Stansbury v. Hannigan*, 265 Kan. 404, Syl. ¶ 4, 413, 960 P.2d 227 (1998). In interpreting administrative regulations, courts generally defer to an agency's interpretation of its own regulations. The agency's interpretation will not be disturbed unless it is clearly erroneous or inconsistent with the regulation. *Schmidt v. Kansas Bd. of Technical Professions*, 271 Kan. 206, 214, 21 P.3d 542 (2001).

K.S.A. 2004 Supp. 75-5210(f) specifically allows the Secretary of the DOC to adopt disciplinary regulations to provide a system of punishment, including payment of restitution. Under this authority, K.A.R. 44-12-1306 stated, as amended April 20, 1992:

"(a) When restitution is used in the disciplinary process the following rules and limitations shall apply:

. . . .

"(3) No inmate shall be required to continue payment on any restitution imposed under these rules after release from incarceration and no portion of the inmate's gate money gratuity as authorized by K.S.A. 75-5211 shall be used toward the payment of such restitution."

K.A.R. 44-12-1306(a)(3) was again amended effective February 15, 2002, by inserting the following sentence into subsection (a)(3): "Upon any subsequent readmission of the inmate to a facility, any restitution owed may be collected." The DOC relies on this language of K.A.R. 44-12-1306(a)(3) for its authority to garnish all of the funds in Tonge's prison account until restitution is paid. The district court concluded the regulation was improperly applied in its ruling that it "was not an effective regulation until after the petitioner had completed his sentence."

It is important to point out that what we refer to as administrative or disciplinary restitution involved in this appeal was *not* imposed by a court as a part of the criminal sentence on the escape charge. The restitution imposed against Tonge was based on his violation of DOC's inmate rule book provisions that reference acts prohibited by Kansas law. See K.A.R. 44-12-1001; K.A.R. 44-12-1301(a)(2) and (b)(7). This fact will be critical to our later discus-

sion of *State v. Hymer*, 271 Kan. 716, 26 P.3d 63 (2001), a case dealing with court imposed restitution upon which Tonge relies.

Dates are critical to the result we reach in this case, and we first consider Tonge's claim that the amendment to K.A.R. 44-12-1306(a)(3) was not effective as of February 15, 2002. Tonge argues that since the amendment did not appear in the 2002 supplement to the K.A.R. and first appears in the 2003 K.A.R. with a certificate dated October 1, 2003, stating all regulations are contained therein, the amendment was not effective until after Tonge was discharged from his escape sentence.

This argument is incorrect. An examination of the Kansas Register shows the amended provision of K.A.R. 44-12-1306(a)(3) was published in Volume 21, No. 4, pp. 123-24, on January 24, 2002. "A permanent regulation is effective 15 days following publication in the Kansas Register or at a later date specified in the body of the regulation." Vol. 3, Kansas Administrative Regulations, Commentary, p. v. See K.S.A. 77-415 *et seq.* and, specifically, K.S.A. 77-430a. The language in issue in this appeal found in K.A.R. 44-12-1306(a)(3) that "[u]pon any subsequent readmission of the inmate to a facility, any restitution owed may be collected" became properly effective on February 15, 2002, at a time Tonge was lawfully incarcerated under the control of the DOC.

Both parties have framed the issue we must decide as whether Tonge is required to continue paying disciplinary restitution for an event when the incarceration related to that event has ended.

Tonge argues that we are obligated to consider the reasonableness of the restitution, as was done in *Tonge 1*, and should follow the approach taken in *Hymer*, 271 Kan. 716. We there interpreted specific statutory language of K.S.A. 2000 Supp. 21-4610(c) and (d) to preclude the sentencing judge from imposing as a condition of probation an unpaid order of restitution made in a prior case. 271 Kan. at 723-24.

*Hymer* is distinguishable from our case. The language of K.S.A. 2000 Supp. 21-4610(d) contains a specific limitation on what restitution in criminal cases can address. There is no such limitation found in K.A.R. 44-12-1306(a)(3). In addition, the effect of the sentencing court's restitution order in *Hymer* was to essentially

make a new order for restitution in a prior criminal case even though the old order for restitution continued to be enforceable.

District court orders for restitution in criminal cases are subject to enforcement like other civil judgments. K.S.A. 2004 Supp. 60-4301. While we did not reach the double jeopardy issue raised in *Hymer* because it was resolved by statutory considerations, the allowance of a new order of restitution based on a prior criminal sentence would have created the opportunity of the holder of a restitution judgment for a duplicative collection. The continued enforcement of Tonge's disciplinary restitution order is of a single amount. The *Hymer* decision does not aid Tonge.

The issue we face is more correctly framed as whether the DOC has authority to collect disciplinary restitution from an inmate who has been released from incarceration and subsequently, because of another crime committed by that inmate, returned to incarceration. The language of the February 15, 2002, amendment to K.A.R. 44-12-1306(a)(3) specifically allows the DOC to continue collection of a previously imposed restitution order.

The ultimate argument which Tonge promotes is that an administrative regulation has the force and effect of a statute and must be considered to operate prospectively unless a contrary intent is clearly indicated. See *Harder v. Kansas Comm'n on Civil Rights*, 225 Kan. 556, 559, 592 P.2d 456 (1979). Tonge claims since the administrative restitution was based on 1998 actions, the amended regulation does not act on the amount awarded for the escape expenses.

The legislature has not restricted the DOC from making regulations aimed at collecting unpaid disciplinary restitution during subsequent incarcerations. The DOC contends it has always looked at restitution as a rehabilitative tool as it stresses financial responsibility and discourages recidivism.

It is a fundamental rule that a statutory (regulatory) change is to be applied prospectively unless the language clearly indicates it was intended to apply retroactively *or the change is procedural or remedial in nature and does not prejudice the substantive rights of the parties. State v. Sutherland*, 248 Kan. 96, Syl. ¶ ¶ 4, 5, 804 P.2d 970 (1991).

The difference between whether a matter is procedural or substantive was clearly recognized by our court in *State v. Hutchison*, 228 Kan. 279, 287, 615 P.2d 138 (1980), where we stated:

"As related to criminal law and procedure, *substantive law* is that which declares what acts are crimes and prescribes the punishment therefor; whereas *procedural law* is that which provides or regulates the steps by which one who violates a criminal statute is punished. [Citation omitted.]"

The DOC necessarily asks us to find that the 2002 amendment of K.A.R. 44-12-1306(a)(3) is procedural in nature as it merely sets forth the procedure under which a validly entered order of disciplinary restitution may be collected from a debtor who leaves prison with an unpaid amount but is returned to incarceration because of a subsequent criminal act.

We find no Kansas cases precisely on point, but there are similarities in cases where statutes of limitations are extended.

In *State v. Nunn*, 244 Kan. 207, 214-20, 768 P.2d 268 (1989), the effect of increasing by statutory amendment of the statute of limitations from 2 years to 5 years for crimes involving sex offenses was considered. Nunn argued the amendment affected substantive rights and could not be retroactively applied to offenses committed prior to its effective date and, even if it could, such retroactive applications would violate the constitutional prohibition against ex post facto laws. The *Nunn* court noted that statutes of limitations are measures of public policy entirely subject to the will of the legislature, *State v. Bentley*, 239 Kan. 334, 339, 721 P.2d 227 (1986), and that in civil cases, limitation periods have been held to be remedial rather than substantive because they bar the remedy and not the right, *Strecker v. Wilkinson*, 220 Kan. 292, 298, 552 P.2d 979 (1976). *Nunn*, 244 Kan. at 216.

The *Nunn* court concluded criminal statutes of limitations are procedural and not substantive and may be applied to crimes committed prior to the effective date of the amendment so long as the prior statute of limitations had not expired prior to the effective date of the amendment. *Nunn*, 244 Kan. at 218. The *Nunn* opinion established restrictions on the retrospective application of the statutory amendment, stating that "if the statute being amended has

run on the specific crime charged, then the amendment cannot be applied to resurrect a prosecution which has already been time-barred." 244 Kan. at 218.

The *Nunn* court also made an ex post facto analysis that adopted *State v. Anderson*, 12 Kan. App. 2d 342, 344, 744 P.2d 143 (1987), which followed *Miller v. Florida*, 482 U.S. 423, 96 L. Ed. 2d 351, 107 S. Ct. 2446 (1987), and *Weaver v. Graham*, 450 U.S. 24, 67 L. Ed 2d 17, 101 S. Ct. 960 (1981). *Nunn* set forth the following quote from *Anderson*:

" 'For a criminal or penal law to be ex post facto, two elements must be present: the law "must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver*, 450 U.S. at 29; *Stokes v. Orr*, 628 F. Supp. 1085, 1086 (D. Kan. 1985).' " 244 Kan. at 219.

*Nunn* then adopted the reasoning of *State v. Hodgson*, 44 Wash. App. 592, 603, 722 P.2d 1336 (1986), *aff'd* 108 Wash. 2d 662, 740 P.2d 848 (1987):

" '[L]engthening the limitation period before the prosecution is barred does not aggravate the crime, increase the punishment, or allow the offender to be convicted under legal rules permitting different testimony. Courts uniformly hold that extending the statute of limitation before a prosecution is barred is not ex post facto.' " 244 Kan. at 220.

*Nunn* held the amendment extending the period of limitations from 2 years to 5 years does not violate the constitutional bar against ex post facto laws. 244 Kan. at 220.

*State v. Noah*, 246 Kan. 291, 788 P.2d 257 (1990), was similar factually and followed the reasoning of *Nunn*. The *Noah* opinion quoted the Louisiana Supreme Court with approval when it said:

" '[T]he State in criminal matters reserves the right to change the prescription or period of limitation of criminal offenses until it has accrued to the benefit of the accused. Until it has accrued, it can be said, the rights of the accused have not become vested and are subject to regulation or change.' " 246 Kan. at 295 (quoting *State v. Ferrie*, 243 La. 416, 427, 144 So. 2d 380 [1962], *abrogated by State v. Olivieri*, 779 So. 2d 735 [La. 2001]).

It is important to note that the amendments to the statute of limitations at issue in *Nunn* and *Noah* did not specifically state that they were intended to be applied retrospectively.

The analyses of *Nunn* and *Noah* are applicable to our facts. The extension of the time within which to collect disciplinary restitution by the February 15, 2002, amendment of K.A.R. 44-12-1306(a)(3) is similar to the extension of the period of limitations within which a crime may be charged. Just as legislative policy is changeable, the DOC has the statutory right to change the regulation regarding collection of disciplinary restitution.

Changing the method of collecting disciplinary restitution is a change in procedure and has no effect on the underlying disciplinary infractions or the amount of restitution ordered. The method of collection is based on DOC policy, which is articulated by the DOC regulation. Just as a limitation period change is within legislative control, a change in the enforcement of disciplinary restitution is within the DOC's control.

However, there are limitations on DOC actions. DOC regulations must not violate its statutory grant of authority. The regulation at issue here do not exceed the DOC's authority. As an amendment of a statute of limitations cannot take away a previously vested right, *Noah*, 246 Kan. at 295, once an inmate accrues a vested defense to the enforcement of disciplinary restitution, that defense cannot be taken away.

The prior DOC policy for the enforcement or collection of disciplinary restitution provided that no payment would be required after the release from incarceration. K.A.R. 44-12-1306(a)(3) (2000). Thus, under such regulation, Tonge's vested right to defend against paying disciplinary restitution accrued (vested) when he was no longer incarcerated. However, if the amendment became effective while Tonge was still incarcerated and before his vested defense accrued, the limitation to retrospective application does not apply. See *Noah*, 246 Kan. 295, 297; *Nunn*, 244 Kan. 218.

The amendment of K.A.R. 44-12-1306(a)(3) became effective on February 15, 2002. The record clearly shows Tonge was still incarcerated on that date, as he was not guidelines released until March 19, 2002. It is therefore clear the additional wording of the regulation allowing restitution owed to be collected upon any subsequent readmission of an inmate to a facility applies to Tonge notwithstanding the fact the restitution order and amount was de-

termined as a matter of substance prior to the amendment of K.A.R. 44-12-1306(a)(3) effective February 15, 2002. This requires our ruling that the district court be reversed.

We have touched on the additional question of whether the amendment in issue violates the constitutional prohibition of ex post facto action. We hold that it does not for the reasons previously set forth in our quotes from *Anderson* and *Nunn*. We also point out that additional punishment is not prescribed nor is any other action taken which would make the amendment violate the Ex Post Facto Clause of the Constitution.

Reversed and remanded with instructions to deny Tonge the requested relief under his K.S.A. 2004 Supp. 60-1501 action.

GERNON, J., not participating.

LARSON, S.J., assigned.