NOT DESIGNATED FOR PUBLICATION

No. 118,778

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KEVIN T. DAVIS,
*Appellant*,

v.

SAM CLINE (Warden), et al.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed August 10, 2018. Reversed and remanded with directions.

*Matthew L. Tillma*, of Law Office of Gregory C. Robinson, of Lansing, for appellant.

*Sherri Price*, special assistant attorney general, of Lansing Correctional Facility, for appellees.

Before MCANANY, P.J., PIERRON, J., and WALKER, S.J.

PER CURIAM: Kevin T. Davis appeals from the district court's dismissal of his K.S.A. 2017 Supp. 60-1501 petition. In his petition, Davis alleged that officials of the Kansas Department of Corrections (KDOC) misapplied certain KDOC regulations about mail, resulting in a violation of his due process and equal protection rights under the Fourteenth Amendment to the United States Constitution. Because we believe Davis' contentions are correct, we reverse the dismissal of Davis' 1501 petition and remand with instructions to grant his petition.

FACTS

On April 10, 2017, Davis tried to mail two envelopes from the Lansing Correctional Facility. One envelope was addressed to the Oregon State Bar Association (OSBA) and the other envelope to the Oregon Commission on Judicial Fitness and Disability (OCJFD). Both were labeled legal mail. Because Davis was indigent, he was entitled to postage on credit for all his "legal mail" or "official mail" as stated under K.A.R. 44-12-601(f)(3) (2017 Supp.). But, when Davis attempted to mail the envelopes, he was told by a corrections officer that neither constituted legal mail. The corrections officer explained that the prison's KDOC attorney had told her that the OSBA and OCJFD were not qualified recipients of legal mail. Notably, a prior letter marked legal mail from Davis to OSBA had not been blocked by prison officials.

The same day, Davis filled out two inmate request forms, explaining that his mail involved his ongoing case in Oregon. One form was directed to the corrections officer and the other was directed to the KDOC attorney. In the form to the corrections officer, Davis alleged that the corrections officer was violating his due process rights by not allowing him to send the letters because it was adversely affecting his ongoing case in Oregon. The corrections officer simply responded that Davis' two envelopes did not constitute legal mail. The KDOC attorney responded that letters to the OSBA and the OCJFD did not meet the definitions of legal mail as stated under K.A.R. 44-12-601(a)(1)(A) (2017 Supp.) or official mail as stated under K.A.R. 44-12-601(a)(1)(B) (2017 Supp.).

Four days later, Davis filed a grievance form. In it, he reiterated that he had an ongoing case in Oregon, and supplied his case number. He stated that he was acting pro se in his Oregon case. Davis later admitted that he had a "stand by" attorney for his Oregon case even though he was acting pro se.

2

A prison official denied Davis' grievance for the following reason:

> "Your grievance has been investigated regarding the procedures for mailing legal and official mail [and] was answered by [the KDOC attorney] on 4-11-17. She determined that the Oregon State Bar is not a state agency and the Oregon Commission [on] Judicial Fitness and Disability has no authority to control or investigate your custody or Kansas Convictions or conditions of confinement in a Kansas Prison."

Davis appealed the denial of his grievance. The Secretary of Corrections (Secretary) affirmed the denial, finding that "[t]he response rendered to [Davis] by staff at the facility [was] appropriate."

Next, Davis moved for relief under K.S.A. 2017 Supp. 60-1501 in the district court. In his pro se petition, Davis alleged that prison officials had denied his access to the courts. He incorporated by reference all the arguments included in his attached documents, which included all of his filings at the prison. In addition to his administrative filings, Davis attached a court document establishing that he had moved for postconviction relief on August 30, 2016, in his Oregon case.

Additionally, Davis attached a document entitled "Legal Referrals & Information." The document listed the address and phone numbers of the OSBA and the OCJFD. The document stated that the OSBA provided a variety of services, including the following: (1) it could provide the public with free legal information and guides "in the mail . . . on a variety of legal topics"; (2) it could get indigent persons, including criminal defendants, in contact with attorneys; and (3) it could "[review] all inquiries and complaints about lawyer conduct." According to the document, the Commission on Judicial Fitness and Disability "[i]nvestivate[d] complaints from the public regarding judicial misconduct by Oregon state court judges," and would hold hearings on judicial misconduct upon a showing of good cause.

3

The Secretary moved for dismissal of Davis' K.S.A. 2017 Supp. 60-1501 petition. The Secretary asserted that dismissal was appropriate because (1) neither of Davis' letters constituted legal mail nor official mail and (2) Davis' access to the courts had not been hampered by the prison's action. The Secretary alleged that Davis "was not prohibited from mailing these parcels—only mailing them as legal or official mail." In other words, Davis could have paid to mail the letters to the OSBA and the OCJFD. The Secretary also stated that Davis should have mailed the letters to "his counsel or the court in that case."

The district court held a hearing on Davis' 1501 petition and the Secretary's motion to dismiss. At the hearing, Davis continued to act pro se. He repeated that he needed to write to the OSBA and the OCJFD to prepare for his ongoing postconviction case in Oregon. The Secretary argued that Davis did not qualify for postage on credit because his letters were not to "a lawyer or the court." In the end, the district court dismissed Davis' petition because letters to the OSBA and the OCJFD did not constitute official mail or legal mail.

Davis has timely appealed from the dismissal. After appealing, Davis was appointed counsel.

ANALYSIS

On appeal, Davis argues that both the OSBA and the OCJFD constitute qualified recipients of legal mail or official mail under K.A.R. 44-12-601(a)(1)(A)-(B) (2017 Supp.). Although not plainly stated, this argument clearly involves an alleged violation of Davis' due process rights. Davis also argues that the KDOC violated his equal protection rights because it denied him—an indigent prisoner—access to the courts by refusing to send his legal mail or official mail. Davis stresses that it is undisputed that he has "a case and post-conviction motions pending in Oregon."

4

In response, the Secretary points to caselaw suggesting that prisoners' access to justice is not hindered when they have "adequate access to alternative legal resources." The Secretary implies that because Davis had appointed counsel in his Oregon case, he had an "alternative legal resource" to whom he could send his letters. The Secretary argues this meant that Davis was not injured by the KDOC's finding that his letters did not qualify for postage provided on credit. Accordingly, the Secretary contends that the KDOC's interpretation of the regulations was correct while also arguing that the KDOC's application of the regulations was constitutional.

K.S.A. 2017 Supp. 60-1501(a) provides:

"[A]ny person in this state who is detained, confined or restrained of liberty on any pretense whatsoever, and any parent, guardian, or next friend for the protection of infants or allegedly incapacitated or incompetent persons, physically present in this state may prosecute a writ of habeas corpus in the supreme court, court of appeals or the district court of the county in which such restraint is taking place."

Appellate courts exercise de novo review over the dismissal of a K.S.A. 2017 Supp. 60-1501 petition. *Johnson v. State*, 289 Kan. 642, 649, 215 P.3d 575 (2009). Additionally, courts considering 1501 petition dismissals must accept all the allegations made by the petitioner within the petition as true. *Merryfield v. Kansas Dept. of SRS*, 44 Kan. App. 2d 324, 332, 236 P.3d 528 (2010).

To avoid summary dismissal of a K.S.A. 2017 Supp. 60-1501 petition, the petitioner "must allege either (1) shocking or intolerable conduct or (2) continuing mistreatment of a constitutional nature." *Merryfield v. State*, 44 Kan. App. 2d 817, 819-20, 241 P.3d 573 (2010) (quoting *Johnson*, 289 Kan. at 648). Summary dismissal is appropriate if, on the face of the petition, it can be established that petitioner is not entitled to relief, or if, from undisputed facts, or from uncontrovertible facts, such as those recited in a court record, it appears, as a matter of law, no cause for granting a writ

5

exists. See *Barrett v. Hunter*, 180 F.2d 510, 514 (10th Cir.), *cert. denied* 340 U.S. 897 (1950) (stating standard); see also *Bankes v. Simmons*, 265 Kan. 341, 349, 963 P.2d 412 (1998) (ordinary rules of civil procedure do not apply in habeas corpus proceeding). An appellate court reviews a summary dismissal de novo. *Bankes*, 265 Kan. at 349; see *Breier v. Raines*, 221 Kan. 439, 439, 559 P.2d 813 (1977).

In the past, our Supreme Court has considered appeals in actions brought under K.S.A. 2017 Supp. 60-1501 involving the KDOC's alleged misapplication of its regulations. In *Tonge v. Werholtz*, 279 Kan. 481, 109 P.3d 1140 (2005), our Supreme Court explained:

> "[A]dministrative regulations . . . have the force and effect of law. See K.S.A. 77-425. Administrative regulations such as the one in issue adopted by the [K]DOC must be within the agency's statutory authority, as it acts as a political subdivision exercising delegated legislative power. In interpreting administrative regulations, courts generally defer to an agency's interpretation of its own regulations. The agency's interpretation will not be disturbed unless it is clearly erroneous or inconsistent with the regulation. [Citations omitted]." 279 Kan. at 483-84.

The *Tonge* court ultimately held that the KDOC could not "take away [an inmate's] previously vested right" from the KDOC regulations. 279 Kan. at 489. Further, in a recent case, our court held that when an agency incorrectly applies a regulation, the persons subject to the agency's incorrect application of the regulation are "deprived of fair notice and due process." *Schneider v. The Kansas Securities Comm'r*, 54 Kan. App. 2d 122, 139-40, 397 P.3d 1227 (2017), *rev. denied* 307 Kan. 988 (2018).

In this case, Davis has argued that the KDOC's failure to comply with its mail regulations resulted in a violation of his due process and equal protection rights. In the past, our court has explained:  "An indigent inmate's right of access to the courts is derived from the Due Process and Equal Protection Clauses. The constitutional right of

6

access to the courts in a civil action is not absolute or unconditional, except in limited cases where the litigant has a fundamental interest at stake." *Smith v. McKune*, 31 Kan. App. 2d 984, Syl. ¶ 5, 76 P.3d 1060 (2003).

In addressing inmates' claims that their due process and equal protection rights had been violated, the United States Supreme Court in *Bounds v. Smith*, 430 U.S. 817, 821, 824-25, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977), clearly held:

"It is now established beyond doubt that prisoners have a constitutional right of access to the courts.

. . . .

". . . [O]ur decisions have consistently required States to shoulder affirmative obligations to assure all prisoners meaningful access to the courts. It is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them."

Additionally, "'a liberty interest may be implicated when State laws and prison regulations grant inmates liberty interests to which due process protections apply.'" *Schuyler v. Roberts*, 36 Kan. App. 2d 388, 391, 139 P.3d 781 (2006), *aff'd* 285 Kan. 677, 175 P.3d 259 (2008). This is true because when the State places substantive limitations on an official's discretion, so much so that persons have a legitimate reason to rely on the substantive limitation of an official's discretion, those persons have a liberty interest protected by due process. *Williams v. DesLauriers*, 38 Kan. App. 2d 629, 637, 172 P.3d 42 (2007). Thus Davis had a protected liberty interest in sending legal mail on credit, and a right to rely on prison officials not using their discretion to impair that liberty interest.

As a result, caselaw supports a finding that an inmate's due process and equal protection rights may be violated by the State's failure to provide an indigent inmate with stamps to mail letters that are necessary to give the indigent inmate meaningful access to the courts. What is more, assuming Davis' argument about the misapplication of the

KDOC's mail regulations is correct, the KDOC's misapplication implicated his protected liberty interest to rely on the mail regulations. Consequently, we believe Davis has alleged continuing mistreatment of a constitutional nature as required to be entitled to relief under K.S.A. 2017 Supp. 60-1501.

Turning next to the Secretary's arguments, it is important to note that the Secretary's arguments do not respond to Davis' arguments. The Secretary has cited *Bounds* and *Lewis v. Casey*, 518 U.S. 343, 356, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996), for the proposition that so long as indigent inmates have alternative access to the courts, indigent inmates cannot suffer injury by having certain limitations on their access to courts.

It is true that in *Bounds* the United States Supreme Court held that "while adequate law libraries are one constitutionally acceptable method to assure meaningful access to the courts, our decision here . . . does not foreclose alternative means to achieve that goal." 430 U.S. at 830. Nevertheless, in *Bounds*, the inmates argued that their library access within the North Carolina Department of Corrections was inadequate. Likewise, in *Lewis*, the inmates challenged the inadequacies of the legal information available to them within the Arizona Department of Corrections.

Here, however, Davis' case is distinguishable in two ways. First, the *Bounds* and *Lewis* cases clearly involved factually different situations. In *Bounds* and *Lewis*, the issue was the inmates' access to libraries. That is, it involved the inmates' access to legal information *inside* the prison. In this case, however, the issue is an indigent inmate's access to credited legal mail, which thus involves the inmate's ability to seek advice on legal issues *outside* of the prison. Second, and more importantly, Davis challenges *the misapplication of already established prison regulations* that gave him certain rights. Unlike the inmates in *Bounds* or *Lewis*, Davis does not believe that the prison's rules and regulations were inadequate. Instead, he believes the prison's regulations were adequate

8

but misapplied by the KDOC. Thus, the *Bounds* and *Lewis* cases are inapplicable to Davis' case.

Because the Secretary's arguments are incorrect, we must now consider whether the KDOC correctly applied its regulations regarding legal mail, official mail, and postage on credit. In essence, Davis argues that the plain language of the KDOC regulations establish that he was entitled to postage on credit. Therefore, we review the relevant KDOC regulations to determine if the district court correctly dismissed Davis' K.S.A. 2017 Supp. 60-1501 petition.

K.A.R. 44-12-601(a)(1)(A) (2017 Supp.) states:

> "'Legal mail' means mail affecting the inmate's right of access to the courts or legal counsel. This term shall be limited to letters between the inmate and any lawyer, a judge, a clerk of a court, or any intern or employee of a lawyer or law firm, legal clinic, or legal services organization, including legal services for prisoners."

K.A.R. 44-12-601(a)(1)(B) (2017 Supp.) states: "'Official mail' means any mail between an inmate and an official of the state or federal government who has authority to control, or to obtain or conduct an investigation of, the custody or conditions of confinement of the inmate."

In addition, K.A.R. 44-12-601(f)(3) (2017 Supp.) provides:

> "All postage for legal and official mail shall be paid by the inmate, unless the inmate is indigent . . . . The cost of postage for legal or official mail paid by the facility on behalf of an indigent inmate shall be deducted from the inmate's funds, if available. . . . Outgoing legal or official mail sent with postage provided on credit shall be subject to inspection and a cursory reading in the presence of the inmate for the purpose of ascertaining that the mail is indeed legal or official mail, and the inmate shall then be permitted to seal the envelope containing the mail."

9

Once more, as part of our analysis, we must accept all allegations made by Davis as true. See *Merryfield*, 44 Kan. App. 2d at 332. And as stressed by Davis in his brief, the Secretary has not contested that he had an ongoing case in Oregon. The Secretary has also never alleged that the contents of Davis' letters made the letters something other than legal mail or official mail.

With these facts in mind, it is readily apparent that the OSBA constitutes a "legal services organization" as meant in the definition of legal mail under K.A.R. 44-12-601(a)(1)(A) (2017 Supp.). Once again, the OSBA provides free information on Oregon law. It also provides indigent legal services and oversees attorney discipline. Furthermore, the only evidence in the record on appeal supports that Davis' contention that his letter involved access to the Oregon state court; Davis alleged that he was contacting the OSBA about issues related to his postconviction relief case. Accordingly, we hold that Davis' letters to the OSBA fell under the definition of legal mail as meant under K.A.R. 44-12-601(a)(1)(A) (2017 Supp.).

Similarly, based on the documents Davis provided the district court, the OCJFD constitutes a "legal services organization" as meant in the definition of legal mail under K.A.R. 44-12-601(a)(1)(A) (2017 Supp.). Again, the OCJFD is the official office in Oregon that investigates public complaints about judges. The OCJFD may hold a hearing on judicial misconduct if appropriate. Because Davis has asserted that his letter to the Commission on Judicial Fitness and Disability involved his ongoing Oregon postconviction release case, Davis' letter meets the "affecting [his] access to the courts" standard as meant in the definition of legal mail.

Finally, although Davis asserts that he should have been allowed to send his letter to the OCJFD as official mail, his letter to the OCJFD was not labeled official mail. And he did not argue that this letter should be mailed on credit because it was official mail before the KDOC. Because Davis did not raise this issue before the KDOC, he has not

preserved it for appeal. See *Jones v. U.S.D. No. 259*, 55 Kan. App. 2d 567, 574, 419 P.3d 62 (2018) (issues not raised before the agency cannot be raised on appeal). Notwithstanding this problem, the Internet web address of the OCJFD establishes that it is an agency within the Oregon Judicial Branch. Thus, the OCJFD also constitutes an "official of the state" as meant in the definition of official mail under K.A.R. 44-12-601(a)(1)(B) (2017 Supp.). Consequently, Davis' letter would meet the standard of being between "an inmate and an official of the state . . . who has authority to . . . conduct an investigation of, the custody . . . of the inmate" as meant in the definition of official mail. K.A.R. 44-12-601(a)(1)(B) (2017 Supp.).

In summary, an inmate's right of access to the courts involves both the inmate's due process and equal protection rights. *Bounds*, 430 U.S. at 834. Here, Davis attempted to send mail he had labeled legal mail to the OSBA and the OCJFD. Because both the OSBA and the OCJFD constitute qualified recipients of legal mail under K.A.R. 44-12-601(a)(1)(A) (2017 Supp.), the KDOC should have allowed Davis to send his letters as legal mail. In turn, Davis should have been allowed to receive postage on credit as stated under K.A.R. 44-12-601(f)(3) (2017 Supp.). The KDOC's failure to allow Davis to send his mail as legal mail with postage on credit resulted in limiting Davis' access to courts; this, in turn, violated his due process and equal protection rights.

As a result, the district court erred when it dismissed Davis' K.S.A. 2017 Supp. 60-1501 petition. For this reason, we reverse the district court's dismissal and remand with directions to grant Davis' 1501 petition.

Reversed and remanded with directions.