NOT DESIGNATED FOR PUBLICATION

No. 123,983

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MATTHEW J. BEESON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; MERLIN G. WHEELER, judge. Opinion filed March 25, 2022.
Affirmed in part, vacated in part, and remanded with directions.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Amy L. Aranda*, first assistant county attorney, *Marc Goodman*, county attorney, and *Derek
Schmidt*, attorney general, for appellee.

Before ISHERWOOD, P.J., GREEN and BRUNS, JJ.

PER CURIAM: Matthew J. Beeson pleaded guilty to one count of burglary and two
counts of forgery. Since Beeson was out on felony bond from a case in Greenwood
County when he committed the crimes, the trial court sentenced him to 32 months in
prison consecutive to his sentence in his Greenwood County case. The trial court also
ordered Beeson to pay $5,569.76 in restitution at a rate of $300 per month. Beeson now
appeals, arguing: (1) that the trial court's order of restitution is unworkable and an abuse
of its discretion, (2) that we should direct the trial court to issue a nunc pro tunc order to
correct the restitution order to reflect the trial court's oral pronouncement, and (3) that the

1

trial court abused its discretion when it ordered Beeson to serve his sentences consecutively. We affirm the trial court on the first issue because Beeson has not provided evidence that the restitution plan is unworkable. In the second issue, we vacate the restitution order and sentence and remand to the trial court to issue a nunc pro tunc order to correct the restitution order. Finally, as to the third issue, we vacate the consecutive portion of the sentences because of the trial court's mistake of fact and remand with directions to reconsider the order for consecutive sentences. Thus, we affirm in part, vacate in part, and remand with directions.

FACTS

In May 2020, Beeson broke into Wright's Auto Sales in Emporia and stole checks from the owner's car wash business. Beeson fraudulently used the checks at several local businesses over the following few days. After Beeson's arrest, he agreed to plead nolo contendere to one count of burglary and two counts of forgery. Beeson also agreed to pay restitution for the damages related to all the charges—even the dismissed ones. He entered the plea in January 2021.

*Sentencing hearing*

Two months later, Beeson appeared for sentencing. Beeson's counsel, arguing for a downward departure, noted that the crimes "occurred fairly shortly in proximity to each other," that Beeson was under the influence of alcohol when he committed the crimes, and that he sought to use the stolen money to fuel his alcoholism. Beeson told the trial court that he wanted to attend inpatient alcohol treatment and that he could only do that if he were on probation. He also claimed he had about $30,000 in other debts. The State requested that the court impose 34 months' imprisonment—the aggravated presumptive sentence—for the burglary charge and 18 months' imprisonment for the forgery charges.

2

The State asked that the sentences be run consecutive to one another and consecutive to Beeson's sentence from two Greenwood County cases.

The presentence investigation (PSI) report revealed Beeson was in custody in Greenwood County for felony DUI, transporting an open container, and attempted identity theft. According to Beeson, the attempted identity theft happened on the same day as his burglary of Wright's Auto Sales. It also showed Beeson had been on felony bond in Coffey County when he committed the burglary and forgeries. Beeson had a criminal history score of A.

The trial court sentenced Beeson to 32 months' imprisonment—the midpoint presumptive sentence—for the burglary charge and 16 months' imprisonment for the forgery charges. The trial court set these sentences to run concurrent. The trial court added:

> "As a practical matter, however, service on this sentence will not begin until completion of the services in the Greenwood County cases. And it is my order that you will be—that the sentences in this case, pursuant to the special sentencing rule, are ordered to be served consecutively to the remaining balance of any time in [the Greenwood County cases], or the balance of any term that may be left in [the Coffey County case]."

Just before the sentencing hearing ended, Beeson asked about the trial court's application of Special Rule 10. According to Beeson, one Greenwood County conviction was for an identity theft that occurred the same day as the Lyon County burglary, so he could not have been out on bond when he committed it. The trial court explained:

> "By statute I'm required to make any sentence that takes place in this case, because of the special sentencing rule, consecutive to any other outstanding sentences that you have. And I think we've noted there's a Special Sentencing Rule Number 10.

"The decision of whether or not you serve [the Greenwood County cases] concurrently with each other was entirely up to the district court in Greenwood County. I'm not ordering those two to be served consecutively. All I'm saying is that your sentence in this case is consecutive to whatever is left in those two cases."

Beeson asked again why the trial court chose to run his Lyon County cases consecutive to one of the Greenwood County cases. The trial court responded:

"Well, that's purely a decision that I get to make. Quite frankly, even if there wasn't a special sentencing rule my review of consecutive and concurrent decisions is simply that if you have an opportunity to discontinue the behavior between the time of the commission of the two offenses, generally speaking, I'm going to order them to be served consecutively and that's why I've done that in this case."

The trial court set another hearing to discuss restitution and adjourned. On the journal entry of sentencing, the trial court confirmed that the sentences would run consecutive to the sentences from Coffey and Greenwood Counties. The trial court also wrote that Special Rule 10 applied.

*Restitution hearing*

About a month later, the trial court held a hearing to determine the appropriate restitution order. The court heard testimony from Wright's Auto Sales' owner and a claims representative from Wright's Auto Sales' insurance company, who both testified about the damages. Beeson then testified that he owed more than $20,000 from his other criminal cases and about $20,000 in child support. As for his earnings potential, he claimed he could earn over $30 per hour if he could get a job welding, which he was trained to do.

After the testimony, the State asked the court to order Beeson to pay $6,849.20 in restitution to Wright's Auto Sales, the bank, and the insurance company. Beeson's counsel asked that the court ensure that the restitution order was workable considering Beeson's debts to other courts and back child support. Beeson's counsel also noted that he would be incarcerated for at least three years and would not begin paying until his release.

After the trial court examined the details of each restitution request, it turned to Beeson's earnings potential. The court remarked, "Mr. Beeson has something going for him in his future in that he is certainly an employable individual at a—what I would consider to be a highly-skilled trade. He has the capacity to make significant earnings." At the same time, though, the court noted that Beeson already owed over $40,000 to courts and in child support. With that in mind, the court stated:

> "I think Mr. Beeson, should he be employed as he indicates that he has, is capable of making payment of that obligation; although, it's going to come on a very slow basis. And so what I'm going to do is, I am going to set for him a payment plan of $300 a month until the matter is paid. That payment plan to be collectible either during the course of his incarceration, if he has earnings while incarcerated, or as a condition of postrelease supervision. I think that will fulfill both the workability and plan components that the Court is required to consider in the matter of restitution."

The trial court adjourned.

After the hearing, the trial court filed a journal entry, which did not make clear that the restitution is not due until Beeson's release from prison. Instead, it said: "[T]he defendant shall pay the sum of $300.00 per month towards restitution until paid in full."

Beeson timely appeals.

ANALYSIS

*Did the trial court abuse its discretion by ordering Beeson to make unworkable restitution payments?*

Beeson argues that the trial court's restitution order violates K.S.A. 2020 Supp. 21-6604(b)(1), which prohibits a trial court from entering a restitution order if "the court finds compelling circumstances that would render a plan of restitution unworkable." He also claims the newer version of the statute, which applies retroactively and requires restitution be due immediately, should not apply here. Beeson objected to the order's workability before the trial court, so this claim is properly preserved for review. *State v. King*, 288 Kan. 333, 356, 204 P.3d 585 (2009).

*Workability*

When a defendant claims a trial court's restitution plan is unworkable, this court reviews it under an abuse of discretion standard. *State v. Shank*, 304 Kan. 89, 93, 369 P.3d 322 (2016). The trial court abuses its discretion if no reasonable person would agree with its decision, or it is based in an error of law or fact. 304 Kan. at 92. Restitution is the rule and a finding that restitution is unworkable is the exception. *State v. Holt*, 305 Kan. 839, 842, 390 P.3d 1 (2017). To that end, Beeson bears the burden of establishing compelling circumstances that show why he cannot make the required payments. 305 Kan. at 842.

Workability should not be determined by a rigid formula. See *State v. Meeks*, 307 Kan. 813, 819, 415 P.3d 400 (2018) ("We are wary of the rigid definition of 'unworkable' that may be taking shape as a result of the numerous Court of Appeals decisions."). Instead, courts should evaluate unworkability claims case by case. In doing so, they should consider the defendant's income, present and future earning capacity, living expenses, debts and financial obligations, and dependents. And in all cases, the trial court

should keep in mind the twin goals of restitution: compensation for victims and deterrence and rehabilitation of the guilty. 307 Kan. at 820.

Beeson argues the trial court's order was "speculative in nature" because it relied on his claim that he would make $30 per hour as a welder. He claims that his criminal history will affect his ability to obtain employment, and if he cannot make a welder's wage, he will be unable to pay $300 per month in restitution.

But this argument contradicts law that Beeson quotes in his brief: the *Meeks* factors permit trial courts to consider "present *and future* earning capacity" when formulating restitution plans. (Emphasis added.) 307 Kan. at 820. Future earning capacity is speculative in nature, so a trial court could never predict a defendant's future income with pinpoint accuracy. Instead, it must rely on the defendant's testimony to determine the appropriate amount and rate of repayment. As for the effect Beeson's criminal history will have on his future earnings, this too is an unknown issue. A court cannot predict how a defendant's criminal history might affect his or her wages. Again, a defendant's testimony provides the trial court a basis by which it can craft a workable restitution plan.

Indeed, Kansas courts have affirmed restitution orders that relied on speculative future earnings. In *Meeks*, for instance, the defendant argued his $14,356.21 restitution order was unworkable because he had no income, had multiple financial obligations, and was incarcerated. Yet despite the defendant's precarious financial situation, he "did not provide evidence to show that he would be unable to pay restitution after his release from prison." 307 Kan. at 821. And since the defendant did not present evidence that he could not work, the court held that the order was reasonable. In short, then, the court affirmed an order that relied on speculation that the defendant would obtain employment and earn income after his release from prison. Beeson testified that he hopes to earn a high wage after his release from prison, and the court used that information to formulate the restitution order. In *State v. Goeller*, 276 Kan. 578, 77 P.3d 1272 (2003), the Kansas

7

Supreme Court similarly affirmed a trial court's restitution plan when the defendant challenged its workability. The court held that the defendant "presented no evidence of his inability to pay, and his own and his counsel's statements about his former *and likely future employment* are adequate to uphold the district judge's choice of amount under our abuse of discretion standard of review." (Emphasis added.) 276 Kan. at 583. Here too, Beeson's statements about his future earning capacity are enough to affirm the court's judgment.

Finally, Beeson argues the total restitution amount of $5,569.76 is unworkable because of his existing financial obligations. He says his "priority debt" is past-due child support, and he will have little to no money left after he pays the child support and provides for his necessities. Yet, Beeson has provided no evidence that the added restitution debt makes for an unreasonable financial burden. On the other hand, the State notes that a $300 monthly payment would be 6 percent of Beeson's monthly income if he earns $30 per hour and 20 percent of his income if he earned $10 per hour. Under both plans, Beeson would pay off the balance of the order in around 18 months.

While the *Meeks* court warned this court against rigid workability formulas, it helps to compare this plan to other cases. Beeson cites *State v. Herron*, 50 Kan. App. 2d 1058, 1060-61, 335 P.3d 1211 (2014), where the court ordered the defendant—who made $680 per month and had practically no disposable income—to pay $6,864 per month in restitution. Despite the defendant's poverty, the State suggested she pay $10 per month for 57 years despite her 18-month probation term. If the defendant wanted to pay the restitution during her probation term, though, she would have to pay $381 per month— over half of her total income. The court found those options unworkable and vacated the trial court's order.

Compare this with *State v. Holt*, 305 Kan. 839, 844, 390 P.3d 1 (2017), where the defendant invoked *Herron* to argue his restitution plan—which required him to pay

$12,000 in restitution despite his prison income of $9 per month—was unworkable. But the Kansas Supreme Court said *Herron* was distinguishable because the restitution was not immediately payable and the defendant did not demonstrate a future inability to pay the restitution. And because the defendant could not meet his burden to show the restitution plan would be unreasonable in the future, it was not unworkable. The court affirmed the trial court's restitution order. 305 Kan. at 844-45.

So too here, Beeson has cited his other financial obligations to argue the restitution plan is unworkable. But unlike *Herron*, he has not shown why a $300 per month payment would be impracticable or unreasonably burdensome, especially if he accomplishes his stated goal of earning $30 per hour as a welder. Further, if Beeson timely makes the required payments, he will pay the restitution in full in 18 months—a far cry from the 57-year term in *Herron*. Since Beeson has not established that no reasonable person would agree with the restitution plan, he has not met his burden to show unworkability. See *Shank*, 304 Kan. at 92. We affirm the trial court's restitution order.

*K.S.A. 2020 Supp. 21-6604(b)(1) and Retroactivity*

Beeson also claims the plan is unworkable because Beeson cannot pay $300 per month while incarcerated. He says the court did not clarify whether the amount was collectible while he was incarcerated and would be sent to collections if he cannot pay. Kansas courts have held that restitution—unless the trial court explicitly says otherwise—is not subject to collection until the defendant's release from incarceration. See *State v. Alcala*, 301 Kan. 832, 840, 348 P.3d 570 (2015); see also *State v. Alderson*, 299 Kan. 148, 151, 322 P.3d 364 (2014) (restitution not due while prisoner incarcerated unless trial court unambiguously declares contrary intent on the record).

However, the Legislature changed the law on restitution repayment in 2020. While the 2019 version of the restitution statute did not specify when restitution was due, the

9

newer version provides that restitution is due *immediately* unless: (A) The court orders that the defendant be given a specified time to pay or be allowed to pay in specified installments; or (B) the court finds compelling circumstances that would render restitution unworkable, either in whole or in part. K.S.A. 2020 Supp. 21-6604(b)(1). Here, though, the crime occurred before the 2020 statute went into effect. But the new statute also provides: "The amendments made to this section by this act are procedural in nature and shall be construed and applied retroactively." K.S.A. 2020 Supp. 21-6604(v). The trial court ordered restitution in April 2021, so the amendment's retroactivity clause applies to his pre-amendment crime. And if the amendment applies retroactively, Beeson's argument has merit—it would be difficult to pay $300 per month in restitution if it is due while he is in prison.

Retroactive application of a statute implicates the United States Constitution's Ex Post Facto Clause. U.S. Const. art. I, § 10. The Legislature cannot immunize a law from ex post facto scrutiny by labelling it "procedural"; subtle ex post facto violations are no more permissible than overt ones. *Collins v. Youngblood*, 497 U.S. 37, 46, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990). An ex post facto violation occurs when a statute applies to acts committed before the statute went into effect and application of the statute disadvantages the defendant. *State v. Todd*, 299 Kan. 263, 277-78, 323 P.3d 829 (2014). The new statute's retroactivity clause means the first element applies. As for the second element—the amendment's disadvantage to Beeson—the Kansas Supreme Court recently provided guidance in *State v. Patton*, 315 Kan. ___, 503 P.3d 1022 (2022). There, the defendant challenged the retroactive application of an amendment that required the trial court to count his prior out-of-state convictions to determine his repeat offender status. The court looked to the three types of disadvantages outlined in *Beazell v. Ohio*, 269 U.S. 167, 169-70, 46 S. Ct. 68, 70 L. Ed. 216 (1925): (1) statutes that punish as a crime conduct that was innocent when the person committed it; (2) statutes that increase the punishment for a crime after its commission; and (3) statutes that deprive a person of a defense to a crime available when it was committed. The *Patton* court concluded the

second disadvantage applied to the defendant because the new scheme led to a more severe punishment than he would have received under the old one. Thus, retroactive application violated the Ex Post Facto Clause. 503 P.3d at 1032.

The first and third disadvantages are facially inapplicable. But does the 2020 amendment to the restitution statute increase the punishment for the crime? *Beazell* contains a carve-out for retroactive laws that are simple procedural changes. See 269 U.S. at 170. Procedural laws provide or regulate the steps by which one who violates a criminal statute is punished, while substantive laws declare crimes and prescribe punishments. *State v. Hutchison*, 228 Kan. 279, 287, 615 P.2d 138 (1980). In *Tonge v. Werholtz*, 279 Kan. 481, 487, 109 P.3d 1140 (2005), the Legislature amended a regulation to extend the time in which it could collect disciplinary restitution from prisoners. Facing an ex post facto challenge, the Kansas Supreme Court held no violation occurred because "[c]hanging the method of collecting disciplinary restitution is a change in procedure and has no effect on the underlying disciplinary infractions or the amount of restitution ordered." 279 Kan. at 489, 490. So too here, the Legislature did not change the amount of restitution that Beeson owed; it simply changed the timeline on which the restitution was to be collected. To that end, the amendment did not increase Beeson's punishment and did not violate the Ex Post Facto Clause.

Because retroactive application of K.S.A. 2020 Supp. 21-6604(b)(1) does not violate the Ex Post Facto Clause, it properly applies to the trial court's restitution order. If the restitution payments were due immediately, he would have to begin payments while in prison. Here, though, the trial court said, "I am going to set for him a payment plan of $300 a month until the matter is paid. That payment plan to be collectible either during the course of his incarceration, *if he has earnings while incarcerated*, or as a condition of postrelease supervision." (Emphasis added.) In other words, the trial court's order was qualified—Beeson must only make restitution payments if he earns money in prison. Under K.S.A. 2020 Supp. 21-6604(b)(1)(A), restitution is not due immediately if the trial

11

court orders "the defendant be given a specified time to pay or be allowed to pay in specified installments." The trial court here specified the conditions under which Beeson must pay his restitution in prison, and if he does not make adequate earnings there, he will not have to pay. The trial court's $300-per-month restitution plan does not automatically apply while Beeson is incarcerated.

In sum, the trial court's restitution order is not unworkable because Beeson has not shown he will be unable to pay. And although K.S.A. 2020 Supp. 21-6604(b)(1)(A) applies retroactively, the trial court's order provides for Beeson to avoid immediate payments if he does not earn money while in prison. The restitution plan, as set forth by the trial court at the restitution hearing, is workable. Therefore, we affirm the trial court.

*Should we direct the trial court to issue a nunc pro tunc order to correct the journal entry of restitution?*

Beeson's next argument relates to the first. At the restitution hearings, the trial court ordered the restitution payments to be collected during Beeson's incarceration if he had earnings while incarcerated. Under the written order of restitution, though, restitution payments are collectible regardless of Beeson's earnings. Beeson argues that we should order the trial court to issue a nunc pro tunc order to correct this discrepancy. The State agrees that the restitution order was incorrect and that the nunc pro tunc order is the appropriate remedy.

Although Beeson did not object at the trial court, K.S.A. 2020 Supp. 22-3504(b) permits us to correct clerical mistakes in orders at any time. Whether the trial court's order should be corrected is a question of law over which we exercise unlimited review. *State v. Vanwey*, 262 Kan. 524, 527, 941 P.2d 365 (1997).

12

As outlined earlier, the trial court's order provided for Beeson to avoid immediate restitution payments if he made no money in prison. The trial court's spoken intent to defer collection until Beeson's release, unless he has earnings in prison, is correct and the journal entry should be corrected to reflect the actual sentence imposed. *State v. Mason*, 294 Kan. 675, 677, 279 P.3d 707 (2012). The trial court can correct an erroneous journal entry with a nunc pro tunc order to reflect the sentence pronounced from the bench. 294 Kan. at 677. As a result, we remand with directions to the trial court to issue a corrected journal entry that reflects its actual order pronounced from the bench.

*Did the court abuse its discretion when it ordered Beeson to serve his sentence consecutively to his sentences in other jurisdictions?*

Finally, Beeson argues the trial court made a mistake of fact when it found that he was on felony bond when he committed the offenses and ordered him to serve his sentence consecutively to his Greenwood County sentences. The State offers two rebuttals: (1) that we lack jurisdiction to hear this claim because the sentence fell within the presumptive sentence range and (2) that Beeson was on felony bond for a case from Coffey County, so the finding was proper.

*Jurisdiction*

The State points to K.S.A. 2020 Supp. 21-6820(c)(1), which prohibits appellate courts from reviewing sentences within the presumptive sentence for the crime, to argue that we have no jurisdiction to hear Beeson's claim. For his part, Beeson argues that we may review a claim that the trial court improperly applied its discretionary authority even if it ultimately imposed a presumptive sentence.

Beeson cites *State v. Cisneros*, 42 Kan. App. 2d 376, 378, 212 P.3d 246 (2009), to argue jurisdiction is proper. There, after the State moved to revoke the defendant's probation, the trial court judge—who was not the sentencing judge—refused to reduce

13

the defendant's prison sentence because he believed he did not have the statutory authority to do so. On appeal, the State argued the court was without jurisdiction because the prison sentence fell within the presumptive range. But a panel of this court held that jurisdiction was proper because the defendant was "not appealing the term or length of his sentence so much as he is appealing the district court's judgment that it had no power to reduce his sentence upon revoking his probation." 42 Kan. App. 2d at 379. The defendant asked the court to interpret the relevant statute, not the court's judgment on the length of the sentence, so the court had jurisdiction.

Our Supreme Court relied on *Cisneros* in *State v. Warren*, 297 Kan. 881, 883, 304 P.3d 1288 (2013), where the trial court held that the applicable statute barred it from considering a downward departure based on the small amount of marijuana the defendant possessed. On appeal, the State again argued jurisdiction was improper because the sentence was within the presumptive range, but the court held jurisdiction was proper because the appeal concerned the trial court's statutory authority, not the appropriateness of the sentence itself. 297 Kan. at 884. Rather than asking the court to second-guess the trial court's exercise of its discretion that led to the presumptive sentence, the defendant asked the court to clarify what the statute allowed it to consider. Thus, the issue did not focus on the sentence. But instead, the issue focused on the trial court's statutory authority. So under *Cisneros* and *Warren*, an appellate court may review a presumptive sentence if the question involves an interpretation of the trial court's statutory authority.

Here the trial court relied on the special sentencing rule under K.S.A. 2019 Supp. 21-6606(d) to order the Lyon County sentence consecutive to the two Greenwood County cases. As a result, we have jurisdiction because this appeal concerns the trial court's proper application of the sentencing rule under K.S.A. 2020 Supp. 21-6606(d).

14

*The trial court's mistake of fact*

Beeson argues the trial court committed a mistake of fact when it found he was on felony bond in Greenwood County when he committed the crimes in Lyon County. He claims that the PSI report showed the special rule for felony bond applied to one Coffey County case, but not the Greenwood County cases. Thus, he maintains that the trial court misread the PSI report. Lyon County, however, argues that the PSI report accurately reflected Beeson's status for his Coffey and Greenwood County cases.

For over a century, Kansas courts have recognized that trial court judges have the discretion to order either a consecutive or concurrent sentence so long as doing so reflects legislative policy. *State v. Quested*, 302 Kan. 262, 285, 352 P.3d 553 (2015). To that end, we review whether the trial court abused its discretion. The trial court does so if its action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Baker*, 297 Kan. 482, 484, 301 P.3d 706 (2013).

In ordering Beeson to serve his sentence consecutively to his other sentences, the trial court relied on Special Rule 10, which requires trial courts to order new sentences consecutive to previous sentences if the defendant was on felony bond when he committed the crime. K.S.A. 2019 Supp. 21-6606(d) (the statutory basis for Special Rule 10). The PSI report shows—and Beeson concedes—that he was out on bond in Coffey County when he committed the crimes at issue in this appeal. Under Special Rule 10, then, the trial court must run his sentence consecutive to his Coffey County sentence. Nevertheless, the PSI report did not state that Special Rule 10 applied to the 2020 Greenwood County cases. Thus, the remaining issue is whether the court erroneously believed Beeson was on bond in both Coffey and Greenwood County when he committed the crimes.

15

A close look at the transcript from the sentencing hearing reveals that the court was mistaken. The court stated, "[I]t is my order that you will be—that the sentences in this case, pursuant to the special sentencing rule, are ordered to be served consecutively to the remaining balance of any time in [Greenwood County] or the balance of any term that may be left in [Coffey County]." This suggests the court believed the Greenwood and Coffey County cases all fell under Special Rule 10. Later, when Beeson questioned the sentence, the trial court said, "By statute I'm required to make any sentence that takes place in this case, because of the special sentencing rule, consecutive to any other outstanding sentences that you have. And I think we've noted there's a Special Sentencing Rule Number 10." This explicitly indicates that the trial court believed Beeson was on felony bond in the two Greenwood County cases when he committed the crimes in Lyon County.

The State provides an alternative explanation. After the trial court cited the special sentencing rule, Beeson again questioned its reasoning. The court responded:

> "Well, that's purely a decision that I get to make. Quite frankly, even if there wasn't a special sentencing rule my review of consecutive and concurrent decisions is simply that if you have an opportunity to discontinue the behavior between the time of the commission of the two offenses, generally speaking, I'm going to order them to be served consecutively and that's why I've done that in this case."

The State argues that this was the real reason the trial court ordered the Lyon County sentence consecutive to Beeson's sentences in the two Greenwood County cases. The State's reasoning is unpersuasive because the trial court's earlier statements about its application of Special Rule 10 are unambiguous. As a result, the trial court ordering the Lyon County sentence consecutive to the Greenwood County cases would seem to be based on a mistake of fact. Because the current record before us shows that the trial court relied on a mistake of fact in applying the special sentencing rule to order the Lyon County prison sentence consecutive to the Greenwood County cases, this constituted an

16

abuse of discretion. Thus, we vacate the consecutive portion of the sentence and remand to the trial court to reconsider its order for consecutive sentences.

Affirmed in part, vacated in part, and remanded with directions.